No. 83-72A

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

DALE LEO GLADUE,

Defendant and Appellant.

Appeal from:  District Court of the Eighth Judicial District,
In and for the County of Cascade
Honorable Joel G.Roth, Judge presiding.

Counsel of Record:

For Appellant:

Karl Nagel, Great Falls, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls, Montana

Submitted on briefs: October 19, 1983

Decided: February 16, 1984

Filed:  FEB 16 1984

*Ethel M. Harrison*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Dale Leo Gladue was convicted of attempt to commit burglary, a felony, after jury trial in the District Court, Eighth Judicial District, Cascade County. He and two other defendants were charged in the same information, but Gladue was tried separately. We reverse the conviction.

On May 9, 1982, the Great Falls City Police Department received a telephone report of a burglary taking place at Anderson Office Machines in Great Falls. The telephone call was from Dick Pike, a former deputy sheriff, who lived across the alley from the Anderson business premises. Shortly before midnight, he had been attracted by some loud banging to look out the back window of his house. Across the alley he saw a light and moving shadows at the back of the Anderson business. He immediately called the sheriff's office to report that he believed a burglary was in progress. While he talked on the telephone he informed the dispatcher that he saw two men walking down the alley away from the premises. A sheriff's deputy and the city police responded immediately and arrived at the scene "within minutes."

Deputy Sheriff Richard Donovan arrived in his patrol car first. With its police lights blinking, the patrol car turned into the alley near the Anderson business where Donovan observed "three male subjects," who began to run from him when he left his patrol car. He ordered them to halt. The one who stopped turned out to be David LaPier, one of the co-defendants here. Donovan put handcuffs on LaPier, and conducted a search, in which he found a small flashlight on his person. The flashlight was introduced into evidence in this case. The other two individuals disappeared.

Pike, who had reported the apparent burglary, came out of his house after the police arrived, but within a few minutes, and in looking over his premises, found the defendant, Dale Gladue, crouching behind a wood pile. Pike took him into custody, and brought him to the deputy out in the alley. In the meantime another officer, in another yard, found defendant George Owens, and he was also taken into custody.

The officers investigated the Anderson business premises. They found its back door open, the door knob broken off, and the premises in darkness. In a later investigation they found two sets of footprints on the doormat at the back door entrance. The owner of the Anderson business later testified to the cost of replacing and repairing the damaged door and door jam, each apparently made of steel. The investigating officers found marks on the door jam and on the door which indicated a pry had been used to force the door open.

The next day, Pike, using a dog he owned trained to do police work, located a tire iron a short distance from the Anderson premises. The tire iron had no fingerprints on it, but its size and shape matched the marks made by the pry on the Anderson doorway.

All three persons arrested were charged with felony attempt to commit burglary. Gladue was tried separately. At his trial an expert photographer testified that he had taken prints from the footprints found on the doormat of the Anderson business and by comparing the same, could definitely identify the shoes worn by Owens as having made one set of the footprints on the doormat. The expert could not prove that the other footprints came from Gladue's shoes, but an officer opined that the square-toed footprint found on the

doormat appeared to match the square-toed shoes worn by Gladue at the time.

In making his opening statement to the jury, Gladue's defense counsel stated to the jury:

> "Now, the defendant will testify that he was simply walking down the alley coming from the bar on Tenth Avenue South to another bar downtown where he was meeting some friends. He was dropped off on Tenth Avenue South--did not have a car--that's where he was walking. Now he will testify in the defense case which follows the State's. . . . I am basically asking you to listen critically to the testimony that you are going to hear today and to listen with an open mind awaiting to hear what the defendant has to say, and perhaps listen with even a questioning mind . . ."

The State put on its case against the defendant, calling several witnesses. Neither of Gladue's co-defendants, Owens or LaPier, were called to testify. In the defendant's case-in-chief, the defendant called one witness, one Arthur Roach, but the defendant himself did not testify and there were no other witnesses. The defense rested, and the State offered no rebuttal.

After settlement of instructions came the closing arguments. In the course of his argument to the jury, the deputy county attorney stated:

> "A second pecularity in this case is that Mr. Nagel has not proved what he set out to prove, as he stated in his opening statement. I took careful notes during the time of Mr. Nagel's opening statement, as did my co-counsel, and I have reviewed those notes prior to preparing my closing argument for you today. Mr. Nagel suggested to you that there would be no direct evidence in this case against Mr. Gladue, the defendant herein, but, of course, that is not true, ladies and gentlemen, because there was direct evidence, and Mr. Nagel also told you that the only evidence in this case would be against other individuals, and that is

not true either, even though there was evidence, both direct and circumstantial, against David Lapier and George Owens, there was also plenty of evidence against Mr. Dale Gladue in this case, so, of course, that wasn't true. Finally, Mr. Nagel told you that the defendant would testify that he was merely walking down the alley, well, the defendant did not testify at all in this case, especially as to that, and we don't know what the reason for that is. Now, ladies and gentlemen, we must be careful here. The defendant is entitled to be presumed innocent until proven guilty, and that presumption carries through the entire trial in this case, and, of course, Mr. Gladue also has the right not to testify in this case, and that is his right, and that is a Constitutional right, and that is a right of all of the citizens of this country, and we must not presume anything merely because he chose, or his counsel chose, not to testify or take the witness stand in this case, so we are not to draw any inference from that; however, Mr. Nagel did assure in his opening statement that the defendant would testify, and he did not, so he did not follow through on what he said would be his proof. . ."

No objection was made by the defense counsel at this point. However, when defense counsel was making his closing summation to the jury, he stated on this point:

". . . I said that there would be no evidence against the defendant, and I stated that the majority of the evidence would be against people who are not on trial here, and that is obviously true. The defendant did not testify in this case. The defendant does not need to testify. The law says that the defendant has the right not to testify, and you are not to hold that against him. It is up to the State to carry the burden of proof, and they must prove, beyond a reasonable doubt every single element of the crime. . . Now, the defendant did not testify. The defendant didn't have to testify. He did not testify for the purpose of trying to hide anything from you, but rather he didn't testify because he didn't need to. The reason: The state has not carried its burden of proof, and that's what I will talk about now. . ."

Not content to let the matter rest, the deputy county attorney in his rebuttal closing argument stated as follows:

> ". . . Let me begin by just going through and numbering and listing for you the concessions that Mr. Nagel made when he was up here giving his final argument to you. He conceded, first of all, that he did tell you that Mr. Gladue, the defendant, would testify, and that he did not testify, and Mr. Nagel says that he did not do so because it was not necessary for him to testify. I am not going to comment beyond that, other than to remind you that Mr. Nagel did not fulfill his assurance to you in his opening, and he also didn't fulfill his assurance to you in regard to what else he would prove in the case. . ."

The defendant was found guilty by the jury and the court eventually entered judgment of conviction against him and sentenced him to five years in prison with all but six months of that sentence suspended.

On appeal Gladue raises the following issues for review:

1. Was there sufficient evidence to support the jury verdict?

2. Did the State violate Gladue's Fifth Amendment rights by commenting in its closing arguments on his failure to testify?

We will discuss first the issue of the comments by counsel on Gladue's not taking the witness stand in his defense.

There can be no doubt that the comments by the prosecutor about the defendant not taking the stand were error. That is conceded by the State. The error was probably compounded by the remarks made by the defense counsel who also referred to it in his closing statement. The fact remains, however, that the comments were initiated by the prosecutor and were used by him again in his closing summation. In

effect, the prosecutor solemnized "the silence of the accused into evidence against him." Griffin v. California (1965), 380 U.S. 609 at 614, 85 S.Ct. 1229, 14 L.Ed.2d 106. The brief submitted by the State in this case states that it cannot argue that the prosecutor's intent was not to comment adversely on the defendant's silence.

The State does contend, however, that error notwithstanding, it was not prejudicial to the defendant. The State contends that the prosecutor's comments added nothing to the impression that was already created by Gladue's failure to testify after the jury had been promised by his lawyer that he would take the stand. The State also contends that no relief should be granted because defense counsel offered no objection to the prejudicial comments at the trial.

The State's contention that the prosecutor's remarks cannot be prejudicial requires us to examine the cases bearing on such prosecutor's comments so that we may draw the necessary legal conclusions therefrom.

In Griffin v. California (1965), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, the United States Supreme Court set aside a judgment of conviction holding that the federal constitution "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." 380 U.S. at 615.

In Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, the United States Supreme Court considered the additional question, whether when such remarks are made by a prosecutor so as to cause constitutional error, it must adopt a per se rule, that such error automatically required a reversal. The Chapman Court adopted the position that it would not adopt a per se rule, and that instead it

would look at such cases where error occurred and determine, "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24. In Chapman, the United States Supreme Court found that the state prosecutor's argument and the trial judge's instructions continuously and repeatedly impressed the jury that the silence of the defendant had served as an irrefutable witness against himself. 386 U.S. at 25. Therefore, it found that the error was not harmless and reversed the conviction.

The State in this case, however, relies on Lockett v. Ohio (1978), 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973. The facts in Lockett parallel to some extent the facts in Gladue. We determine that Lockett does not control this case, but it is necessary for us to discuss the case to show why.

Lockett had been convicted in a felony murder case, and she was sentenced to death. The statement of facts in the case shows that:

> ". . . In the course of the defense presentation, Lockett's counsel informed the court, in the presence of the jury, that he believed Lockett was to be the next witness and requested a short recess. After the recess, Lockett's counsel told the judge that Lockett wished to testify but had decided to accept her mother's advice to remain silent, despite her counsel's warning that, if she followed that advice, she would have no defense except the cross-examination of the state's witnesses. Thus, the defense did not introduce any evidence to rebut the prosecutor's case." 438 U.S. at 592-93.

Nothing further appears in the opinion as to what the prosecutor stated in his summation except the language of Chief Justice Burger as follows:

"At the outset, we address Lockett's various challenges to the validity of her conviction. Her first contention is that the prosecutor's repeated references in his closing remarks to the State's evidence as 'unrefuted' and 'uncontradicted' constituted a comment on her failure on her part to testify and violated her Fifth and Fourteenth Amendment rights. See, Griffin v. California (giving citation). We conclude, however, that the prosecutor's closing comments in this case did not violate constitutional prohibitions. Lockett's own counsel had clearly focused the jury's attention on her silence, first by outlining her contemplated defense in his opening statement, and, second, by stating to the court and jury near the close of the case, that Lockett would be the "next witness." When viewed against this background, it seems clear that the prosecutor's closing remarks added nothing to the impression that had already been created by Lockett's refusal to testify after the jury had been promised a defense by her lawyer and told that Lockett would take the stand." 438 U.S. at 594-95.

It is clear to us from the language used by the United States Supreme Court in Lockett, that the prosecutor did not comment on the failure of the defendant to take the witness stand, but rather commented on unrefuted evidence and uncontroverted testimony of the State's case. We have already held in this state that it is not a comment by a prosecutor on the defendant's failure to take the stand when the prosecutor, in summation, emphasizes the strength of the case the State has presented. State v. Armstrong (1976), 170 Mont. 256, 552 P.2d 616; State v. Dolan (Mont. 1980), 620 P.2d 355, 37 St.Rep. 1860. We have approved in those cases statements by the county attorney which argue that there is "no evidence," or "no testimony" to rebut the inferences raised by the state's evidence, and we have held that this

does not constitute a comment on the failure of the defendant to testify.

Since we find no comfort for the State in the Lockett case, we return to Chapman to consider again the test there imposed on us whether we can declare a belief that the remarks of the prosecutor were harmless beyond a reasonable doubt. We note parenthetically that Chapman held that the harmless error rule becomes a federal question when it involves a claimed denial of rights guaranteed against invasion by the Fifth and Fourteenth Amendments to the United States Constitution. Chapman, supra, 386 U.S. at 21.

The State's case against Gladue is based upon circumstantial evidence. It is not iron-clad. The eye-witness to the attempted burglary, Pike, looking from his home across the alley, discerned a flashlight and moving shadows. He reported to the dispatcher that he saw two persons walking down the alley. When the police officer turned into the alley with his patrol car, he spotted three persons walking down the alley. Later, Gladue was apprehended behind a wood pile. The footprint expert could not prove that the footprints found on the doormat were those of Gladue, although he and another police officer testified that they "appeared" to be Gladue's footprints. Gladue appeared to be in flight at the time of his apprehension. On the other hand, the tire iron found near the scene, and which matched the pry marks, was not connected with any of the defendants, but especially Gladue. No fingerprints were on the tire iron. The flashlight was found on LaPier, and one set of footprints on the doormat were those of Owens. From the evidence, it appears undoubted that Gladue was at the scene of the attempted burglary. Whether he participated in the attempted burglary

may be open to question. He did not testify, and his two co-defendants could not be compelled to testify. Against that background, the comments of the prosecutor on his failure to testify loom larger in proportion and point to his guilt. As a Court, therefore, we are unable to say beyond a reasonable doubt that the prosecutor's comments did not contribute to the guilty verdict against Gladue. On that basis, we must reverse.

There is indeed another significant factor in considering this kind of prejudicial error that was touched upon in People v. Ross (Cal. 1967), 429 P.2d 606. Ross presents an interesting situation. The prosecutor commented on the failure of the defendant to take the stand, and the trial court instructed the jury in much the same manner as was done in Chapman. In considering whether prejudicial error had occurred, the majority of the California court pointed out that without the testimony of the defendant, there were two possibilities that the jury might consider: the defendant was guilty or the defendant had innocently gotten into a get-away car used in a robbery, in which the proceeds of the robbery were contained, and that the defendant's flight from the police, and the presence of the defendant in the robbery car were purely fortuitous. The majority of the California court decided that "given the fact that the defendant fled from the police and fired at them with a sawed-off shotgun similar to that used in the course of the robbery" the two possibilities evaporated into the inherently incredible, leaving no gap in the prosecution's case. 429 P.2d at 614. The majority affirmed the decision. However, Chief Justice Traynor dissented, pointing out that under Chapman, more was

required than simply determining whether under the evidence the error is harmless. Justice Traynor stated:

> ". . . it (Chapman) expressly rejected this court's reliance on overwhelming evidence to establish harmless error, a rejection that can be explained only on the theory that a substantial error that might have contributed to the result cannot be deemed harmless regardless of how clearly it appears that the jury would have reached the same result by an error-free route had the erroneous route been denied it. Overwhelming evidence of guilt does not negate the fact that an error that constituted a substantial part of the prosecution's case _may have played a substantial part in the jury's deliberation_ and thus contributed to the actual verdict reached, for the jury may have reached its verdict because of the error without considering other reasons untainted by error that would have supported the same result. (Citing cases.)
>
> ". . .
>
> "In the present case, as in Chapman, the comments and instruction on defendant's silence constituted a substantial part of the prosecution's case. It served to make defendant a witness against himself by using his silence to stifle the doubts that might have been engendered by the inconsistencies in the prosecution's case. (Citing Griffin). It denied defendant a substantial right, for it served to deprive him of his only defense. Under these circumstances the Attorney General has not established beyond a reasonable doubt that the verdict would have been the same in the absence of error. . ."
> 429 P.2d at 621-22.

A writ of certiorari was issued by the United States Supreme Court in People v. Ross (1968), 391 U.S. 470, 88 S.Ct. 1850, 20 L.Ed.2d 750, and _per curiam_, without argument, the decision in Ross was reversed by the United States Supreme Court, in effect sustaining the position taken by the dissenter, Chief Justice Traynor.

Because we determine that we cannot say beyond a reasonable doubt that the prosecutor's comments in this case did not contribute to the verdict against Gladue, and because the error may have played a substantial part in the jury's deliberation and thus contributed to the actual verdict reached, we reverse the conviction of Gladue.


_____
                   Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
        Justices

Mr. Justice L.C. Gulbrandson dissenting.

I respectfully dissent.

In my view, the prosecutor's statements made during final argument were not so prejudicial as to require reversal.

The prosecutor clearly advised the jury that it was the defendant's constitutional right to not testify, even though defense counsel, in his opening statement, had requested that the jury "listen with an open mind awaiting what the defendant has to say."

Defense counsel made no objection to the prosecutor's statements, and, in fact, he made three separate references in his closing argument that the defendant had not testified.

The fact that no objections were made, no motion for a mistrial was made, and no attempt was made to use this conduct as the basis for a motion for new trial, would seem to indicate that defense counsel did not consider the comments prejudicial prior to the jury returning a verdict of guilty and immediately thereafter.

I would hold that, under Lockett, the effect of the prosecutor's comments was, at most, cumulative, and therefore not grounds for reversal.

_____
Justice

-14-