No. 85-355

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

ROBERT WILLIAM GONYEA,

        Defendant and Appellant.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      James P. O'Brien, Missoula, Montana

      For Respondent:

          Mike Greely, Attorney General, Helena, Montana
Barbara Claassen, Asst. Atty. General, Helena
Robert L. Deschamps, III, County Attorney, Missoula
Robert Terrazas, Deputy County Attorney, Missoula,
Montana

---

Submitted on Briefs: Aug. 21, 1986

Decided: January 6, 1987

Filed:

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

A jury found the defendant/appellant guilty of four counts of burglary. He was sentenced by the court of the Fourth Judicial District in Missoula County, Montana, to twenty-five years in the Montana State Prison. A ten year sentence was imposed in each of the burglary counts, three counts to run concurrently, but consecutive to the sentence in Count I. Five years were added to the sentence because the defendant is a persistent felony offender. He is designated a non-dangerous offender for purposes of parole. Defendant appeals. We affirm.

Appellant (Gonyea) presents two issues on appeal:

(1) whether there was sufficient corroborating evidence to uphold his conviction; and

(2) whether comments by the prosecution on voir dire and opening statement violated his constitutional right against self-incrimination.

Gonyea first argues insufficient corroborating evidence to uphold his conviction. The statutes set forth the requirements for corroborated testimony and legal accountability:

> A conviction cannot be had on the testimony of one responsible or legally accountable for the same offense, . . . unless the testimony is corroborated by other evidence which . . . tends to connect the defendant with the commission of the offense . . .

Section 46-16-213, MCA.

> A person is legally accountable for the conduct of another when:
>
> . . .
>
> (3) either before or during the commission of an offense with the purpose

2

> to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense . . .

Section 45-2-302, MCA.

The question as to whether a witness for the State is an accomplice is--unless such fact is undisputed--for the jury, under proper instruction by the court. State v. Slothower (1919), 56 Mont. 230, 232, 182 P. 270, 271. The District Court instructed the jury:

> It is a question of fact for the jury to determine from the evidence and from the law as given you by the court whether or not any witness other than Neil Vanderpan was or was not an accomplice within the meaning of the law.

This is a proper instruction. The jury also was instructed as to what an accomplice is and when legal accountability exists.

At the close of the State's case-in-chief, Gonyea moved for a directed verdict, alleging insufficient evidence to sustain a conviction for the burglaries. He argued the three key witnesses against him were accomplices as a matter of law and there was insufficient independent corroborative evidence tending to connect him with the commission of the crime. The State admitted Neil Vanderpan was an accomplice as a matter of law, but contested Gonyea's claim that Neil's mother, Selah Vanderpan, and Kris Davis were accomplices as a matter of law.

The concept of legal accountability has been the subject of much attention in case law.

> An accomplice is . . . "one who knowingly, voluntarily and with common intent with the principal offender unites in the commission of a crime . . . One may become an accomplice by being present and joining in the criminal act, by

3

> aiding and abetting another in its
> commission, or, not being present, by
> advising and encouraging its commission;
> but knowledge and voluntary actions are
> essential in order to impute guilt."

State v. Harmon (1959), 135 Mont. 227, 236, 340 P.2d 128, 132, quoting State ex rel. Webb v. District Court (1908), 37 Mont. 191, 200-201, 95 P. 593, 597.

Neil Vanderpan testified he left work with Gonyea the night of the burglaries and they went to Annette Cleary's trailer. Cleary, her son, and Kris Davis were at the trailer. Thereafter Vanderpan and Gonyea left, spent about two hours at a Seely Lake bar, then returned to the Cleary's trailer. About half an hour later, Gonyea and Vanderpan again left the trailer. Outside the trailer Gonyea told Vanderpan they were going to the Rustics to break in.

They broke a lock off the door to the saw shop and took money from drawers. Then they broke the lock on the door to the warm-up trailer and took money from the pop machines. They proceeded to the Swan Valley Center store, and pried open the back door. They took a safe, a black box, and a bank bag behind a nearby building, stuffed their pockets with money and hid what they did not take. They re-entered the store and took coffee cans containing coins. Then they went back toward Cleary's trailer, hid the cans by the side of Cleary's garage, and went inside the trailer.

There is no evidence that Kris Davis was involved in the commission of the burglaries. She was present when Gonyea and Neil Vanderpan returned to Cleary's trailer after allegedly committing the burglaries. She saw them remove money from their pockets and saw Gonyea hide some of it in a closet in the trailer. Gonyea told her about the burglaries,

and that she should tell anyone who asked that he was with her all that evening and night.

About a week after the burglary, Davis went with Gonyea and Neil Vanderpan to Kalispell. Vanderpan drove and Gonyea and Davis rolled coins. Davis made two trips into Rosauer's with fifty dollars in coins, which she exchanged for paper money

This trio made two more trips to Kalispell during the next few days. Selah Vanderpan drove them both times. She testified she did not know before the first trip that Gonyea had committed the burglaries. There is no evidence to the contrary or to support the contention that she helped plan or commit the burglaries.

We find sufficient evidence in the record tending to show neither Selah nor Kris were accomplices to make the question one for the jury. State v. Searle (1952), 125 Mont. 467, 474, 239 P.2d 995, 999. It is within the sound discretion of the District Court to decide whether a motion for directed verdict should be granted. Section 46-16-403, MCA; State v. Goltz (1982), 197 Mont. 361, 642 P.2d 1079; State v. Doney (Mont. 1981), 636 P.2d 1377, 38 St.Rep. 1707; State v. White Water (Mont. 1981), 634 P.2d 636, 38 St.Rep. 1664. The motion was properly denied.

Thereafter, Gonyea introduced evidence to sustain his position. All evidence was considered by the jury, after proper instruction. "[W]here the evidence is conflicting or doubtful, either as to [whether the witness for the State is an accomplice] or as to corroboration, the court should not invade the province of the jury." State v. Smith (1925), 75 Mont. 22, 27, 241 P. 522, 523.

5

> To constitute [one] an accomplice, he must have entertained a criminal intent common with that which moved the defendants . . . and since [they were] not personally present joining in the [burglary, they] must also have advised and encouraged its commission. Whether [they] entertained the criminal intent, and whether [they] advised and encouraged the defendants, were questions properly for the determination of the jury under appropriate instructions.

State v. Slothower, supra, 56 Mont. at 232, 182 P. at 271.

The jury did not determine that Selah Vanderpan or Kris Davis had the requisite criminal intent (mental state) to commit burglary, or that they aided in any way the planning of the burglary. Therefore it determined they were not accomplices. We will not overturn a jury's decision when it was reached after proper instruction. Because neither Selah nor Kris was an accomplice their corroborative testimony is admissible. "[T]he corroboration is sufficient if, 'unaided by the testimony of an accomplice, it tends to connect the defendant with the commission of the offense.'" (Citations omitted.) State v. Smith, supra, 75 Mont. at 27, 241 P. at 523.

Gonyea did not testify in his own behalf. He argues the prosecutor's comments on voir dire and opening statement were highly improper and prejudicial. His motion for mistrial was denied. Gonyea also claims certain statements made by the prosecutor on opening statement were prejudicial. He argues these two incidents entitle him to a reversal of his conviction. We disagree.

The right of an accused to remain silent is, of course, fundamental. It is well settled in this state that a comment so stating is not the same as a comment on the failure to exercise that right. State v. Gladue (Mont. 1984), 677 P.2d

6

1028, 1032, 41 St.Rep. 249, 254. A comment on the defendant's failure to testify violates the self incrimination clause of the Fifth Amendment, applicable to the various states by way of the Fourteenth Amendment. Griffin v. California (1965), 380 U.S. 609, 611, n. 3, 85 S.Ct. 1229, 1231, n. 3, 14 L.Ed.2d 106, 108, n. 3. The prosecutor or judge who makes such a comment "solemnizes the silence of the accused into evidence against himself." Griffin, supra, 380 U.S. at 614, 85 S.Ct. at 1233, 14 L.Ed.2d at 110. Such a comment results in reversible error.

After careful consideration of the entire transcript, however, we are persuaded neither the prosecutor's comments on voir dire, nor opening statement can be held to have been such comments. We find them to be harmless beyond a reasonable doubt. State v. Gladue, supra, 677 P.2d at 1031, 41 St.Rep. at 253; Chapman v. California (1976), 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710. We do not find:

> [T]he language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.

State v. Anderson (1976), 156 Mont. 122, 125, 476 P.2d 780, 782, citing Knowles v. U.S. (10th Cir. 1955), 224 F.2d 168, 170.

Defendant's right not to testify is clearly protected. The prosecution should not refer to the right directly or indirectly at any stage of the trial. Failure to follow this rule of conduct is inviting a mistrial or reversal on appeal.

We affirm.

_____
Justice

7

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

8