No. 98-003

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 44

STATE OF MONTANA,

Plaintiff and Respondent,

v.

ALOYSIUS BLACKCROW,

Defendant and Appellant.

APPEAL FROM: District Court of the Twentieth Judicial District,

In and for the County of Lake,

The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Benjamin R. Anciaux, Polson, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Tammy K. Plubell, Assistant Attorney General, Helena, Montana; Kim Christopher, Lake County Attorney, Mitch Young, Deputy Lake County Attorney, Polson, Montana

Submitted on Briefs: August 6, 1998

Decided: March 16, 1999

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1. In the Twentieth Judicial District Court, Lake County, Aloysius Blackcrow (Blackcrow) was tried before a jury and convicted of the offenses of robbery and aggravated burglary. Blackcrow appeals the jury's verdict and the District Court's denial of his motion for directed verdict. We affirm.

## ISSUES

¶2. 1. Did the District Court err in denying Blackcrow's motion for directed verdict pursuant to § 46-16-403, MCA?

¶3. 2. Was there sufficient evidence presented at trial to support Blackcrow's conviction of robbery and aggravated burglary?

## BACKGROUND

¶4. Sometime shortly after midnight on February 22, 1996, Bruce Stinger (Bruce) and Stacey Worley (Stacey) were attacked by three unknown assailants inside their home in the Donna Jones Trailer Park in Pablo, Montana. The incident began when Bruce, who had fallen asleep in the living room, responded to a knock at the front door. Bruce opened the door to discover a young man standing on his porch. The man asked Bruce if a certain person was in the home. Bruce could not understand what was being asked and the man repeated this inquiry twice before pulling out a gun and pointing it at Bruce.

¶5. Bruce pushed the gun out of his face and attempted to push the man off the porch. Bruce then turned and fled into the house, leaving the door open. Inside the house, Bruce began running down the hall. When he realized he had not shut the front door, Bruce returned down the hallway and found the young man standing in the kitchen with the gun once again pointed at Bruce. Bruce grabbed the gun and attempted to get it away from the intruder.

¶6. At this point, two more men entered the trailer home. The second man entering the trailer also carried a gun. The third man did not carry a gun, but was instead armed with a large knife. The second man ordered Bruce to release the gun held by

the first man and get down on the floor. Bruce complied and lay down on the floor of the living room.

¶7. While he was on the floor, Bruce was pistol-whipped on the head by one of the men and asked repeatedly where the drugs and money were. Bruce answered that he did not have any.

¶8. This interrogation awakened Stacey, who had been sleeping in a bedroom down the hallway. Stacey turned on the light in the bedroom and began getting dressed when one of the men entered the bedroom and pushed her onto the bed. He was followed by another of the assailants, who jumped on top of Stacey, accosted her with a gun and a knife at either side of her head, and began asking her repeatedly where the guns and money were. Stacey responded that if he would let her up, she would get him some money.

¶9. The man released Stacey and she moved to the end of the bed, but an argument ensued between them when Stacey requested that she be allowed to finish dressing. The man then hit Stacey in the head with the gun. She grew angry at this and grabbed for the man's hand holding the gun. The gun fired, and both assailants fled the room. The shot missed Stacey, leaving her uninjured, and she followed the men as they fled down the hallway.

¶10. During the altercation between Stacey and the two assailants in the bedroom, the third man had remained behind in the living room with Bruce. This assailant continuously threatened Bruce with a large knife, ordering Bruce not to look at him or he would stab him. The assailant did in fact stab Bruce twice, once in the front and once in the back of one of Bruce's thighs. The assailant also cut a piece of hair and scalp out of the back of Bruce's head.

¶11. When the men from the bedroom rejoined the third man in the living room, all three exited the house through the front door. Stacey shut the door behind them and called 911. Lake County law enforcement officers and members of the Flathead Tribal Police arrived on scene shortly thereafter. Bruce was taken by ambulance to the hospital and treated for stab wounds.

¶12. Stacey and Bruce provided the officers with a physical description of each of the assailants but could not identity their attackers. The only other evidence taken from

the crime scene was the 9 mm bullet and shell casing from the shot fired inside the bedroom.

¶13. Blackcrow was eventually charged in connection with this case after an anonymous telephone caller informed investigators of the names of two women believed to have been involved in the attack on Bruce and Stacey. The women were identified as Blackcrow's wife, Sandra Boe (Sandra), and a friend of Blackcrow's named Denise Shields (Denise). Sandra and Denise were subsequently located and interviewed by law enforcement officers. In separate interviews conducted in different cities, both women identified Blackcrow, his brother, Gerrard Blackcrow (Gerrard), and Timothy Konefes (Timothy) as the assailants who entered the home of Bruce and Stacey on February 22, 1996.

¶14. Blackcrow was charged with robbery and aggravated burglary for his participation in the events of that evening. Denise and Timothy both testified in person at Blackcrow's trial, and Sandra appeared by deposition testimony, parts of which were read to the jury.

¶15. According to Timothy's testimony and the physical description of the assailants given by Bruce and Stacey, it was Timothy who knocked on the door and first entered the trailer. He was also the man who first entered Stacey's bedroom and pushed her back on the bed. Blackcrow was the second man to enter the trailer. He was the one who pistol-whipped and interrogated Bruce and also the one who assaulted Stacey on the bed and fired the shot in the bedroom. Gerrard was the third man to enter the trailer. It was he who remained in the living room with Bruce during the assault on Stacey.

¶16. At the close of the State's case, Blackcrow moved for directed verdict on the issue of whether the accomplice testimony of Sandra, Denise and Timothy had been sufficiently corroborated to support a conviction. The District Court denied Blackcrow's motion without making any findings on the issue of accomplice testimony. The jury convicted Blackcrow on the charges of robbery and aggravated burglary. Blackcrow appeals.

## DISCUSSION

**¶17. Did the District Court err in denying Blackcrow's motion for directed verdict pursuant to § 46-16-403, MCA?**

**¶18. Section 46-16-403, MCA, permits the trial court in a criminal case to direct a verdict of acquittal where there is insufficient evidence, as a matter of law, to support a conviction. The denial of a motion for a directed verdict is within the sound discretion of the trial court.** *State v. Hayworth*, **1998 MT 158, ¶ 50, 964 P.2d 1, ¶ 50, 55 St.Rep. 631, ¶ 50. We review the denial of such a motion to determine whether, in viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.** *Hayworth*, **¶ 50.**

**¶19. Blackcrow contends that the District Court erred in denying his motion for a directed verdict on the grounds that the only evidence presented at trial which connected Blackcrow to the charged offenses was the uncorroborated accomplice testimony of Sandra, Denise and Timothy, and that under Montana's "accomplice testimony corroboration rule," this testimony was insufficient, as a matter of law, to support his conviction.**

**¶20. The "accomplice testimony corroboration rule" is codified at § 46-16-213, MCA, which reads:**

A person may not be found guilty of an offense on the testimony of one responsible or legally accountable for the same offense, as defined in 45-2-301, unless the testimony is corroborated by other evidence that in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense.

There are two requirements that must be met in order for the application of § 46-16-213, MCA, to justify a directed verdict of acquittal: the witness whose testimony is being offered must be an accomplice, that is, legally accountable for the conduct of the defendant; and the accomplice testimony must be uncorroborated by additional evidence.

**¶21. The circumstances under which a person may be held legally accountable for the conduct of another are set forth in § 45-2-302, MCA, which states in pertinent**

**part:**

A person is legally accountable for the conduct of another when:

. . .

(3) either before or during the commission of an offense with the purpose to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense.

Whether a person may be held legally accountable for the conduct of the defendant, and so qualify as an accomplice for purposes of the "accomplice testimony corroboration rule," is, unless undisputed by the parties, a matter of fact to be determined by the jury. *State v. Gonyea* (1987), 225 Mont. 56, 57, 730 P.2d 424, 425 (citing *State v. Slothower* (1919), 56 Mont. 230, 232, 182 P. 270, 271).

**¶22. The State does not contest the fact that both Denise and Timothy qualify as accomplices under § 45-2-302, MCA, and that their testimony alone would be insufficient to support Blackcrow's conviction absent corroboration. However, the State does contest Blackcrow's contention that Sandra was an accomplice and argues that there was therefore no need to corroborate her testimony connecting Blackcrow to the events of February 22, 1996. In the alternative, the State argues that if Sandra was an accomplice, sufficient corroborating evidence was produced at trial to support Blackcrow's conviction.**

**¶23. For purposes of addressing whether the District Court erred in denying Blackcrow's motion for directed verdict, it is not necessary for this Court to determine whether Sandra was, in fact, an accomplice in the crimes perpetrated against Bruce and Stacey. Rather, our review is limited to whether any rational trier of fact, in viewing the evidence in the record in the light most favorable to the prosecution, could have found that Sandra was not implicated in the commission of those crimes, and that therefore her testimony required no further corroboration. We find sufficient evidence in the record tending to show that Sandra was not an accomplice to make the question one for the jury.**

**¶24. Although Sandra did not appear at the trial to testify in person, portions of her deposition testimony were entered into evidence and read before the jury. In her**

deposition, Sandra testified that she and Blackcrow were married in Coeur d'Alene, Idaho, on February 20, 1996, in the company of a small group of friends and family who had accompanied them on the trip from Havre, Montana, to attend the wedding. The party spent the night in Coeur d'Alene and departed the next day to return to Havre.

¶25. On the way home, they made a detour to visit a friend named J.J. Shields (J.J.) in the Polson/Pablo area. The group contacted J.J. and his sister, Denise, rented a motel room in Polson, and spent most of the evening drinking at the motel room or in various bars in the Polson/Pablo area.

¶26. At some point in the evening, Sandra, Blackcrow, Denise, Gerrard and Timothy left the motel room and drove to the Donna Jones Trailer Park in Pablo. Sandra testified that her primary reason for driving to the trailer park was to take Denise home because Sandra believed Denise was getting too intimate with Sandra's husband. Sandra further testified that an additional purpose for visiting the trailer court was to buy marijuana for Timothy from some dealers Denise knew.

¶27. At the trailer park, Sandra and Denise waited in the truck while the other members of the group disappeared for several minutes. Sandra testified that she believed the men had gone to buy Timothy's marijuana and that she was waiting for Denise to exit the vehicle and go home. Sandra denied any knowledge of the plan to rob the residents of the trailer park.

¶28. Blackcrow argues that the testimony of the other accomplices demonstrates that Sandra knew when the group left the motel that they had a plan to rob some drug dealers and that therefore Sandra's testimony denying her participation in the robbery is not creditable. We note that the record contains widely differing descriptions of the events of February 22, 1996, in the testimony of Sandra, Denise, and Timothy with regard to whether Sandra was made aware of the plan to rob the tenants of the trailer home either prior to leaving the motel or while she was waiting in the truck during the commission of the robbery. However, the fact that there is conflicting testimony on the issue of Sandra's legal accountability only serves to bolster our conclusion that this issue was properly left for determination by the jury. "[W]here the evidence is conflicting or doubtful, either as to [whether the witness for the State is an accomplice] or as to corroboration, the court should not invade the province of the jury." *Gonyea*, 225 Mont. at 59, 730 P.2d at 426 (quoting State v.

Smith (1925), 75 Mont. 22, 27, 241 P. 522, 523).

¶29. We therefore affirm the decision of the District Court in denying Blackcrow's motion for a directed verdict.

¶30. Was there sufficient evidence presented at trial to support Blackcrow's conviction of robbery and aggravated burglary?

¶31. In the opening of his appellate brief, Blackcrow presents the question of whether there was sufficient evidence to support his conviction by the jury. However, the only arguments formulated in Blackcrow's appellate brief relate to the accomplice status of the State's witnesses and whether the accomplice testimony was sufficiently corroborated. From this it would appear that Blackcrow is arguing there was insufficient evidence to support the jury's findings that either the State's witnesses were not accomplices or that the testimony of the accomplice witnesses was sufficiently corroborated.

¶32. However, as the State points out, the jury in this case was never instructed on the issue of accomplice testimony. The record contains no indication that the question of accomplice testimony was ever presented to, deliberated upon, or ultimately determined by the jury as part of its findings.[1] We are therefore presented with the impractical task of reviewing the sufficiency of the evidence to support a finding that was never made. Neither can we, based upon the contents of Blackcrow's appellate brief, determine any alternate basis upon which he is challenging the jury's verdict in this instance.

¶33. This failure is fatal and, without more, is sufficient cause for us to decline to address the issue. It is not this Court's obligation to formulate arguments or locate authorities for the parties in support of their positions on appeal. *See Johansen v. State, Dept. of Natural Resources*, 1998 MT 51, ¶ 24, 288 Mont. 39, ¶ 24, 955 P.2d 653, ¶ 24; *Small v. Good* (1997), 284 Mont. 159, 163, 943 P.2d 1258, 1260; *State v. Sol* (1997), 282 Mont. 69, 76, 936 P.2d 307, 311; *Rieman v. Anderson* (1997), 282 Mont. 139, 147, 935 P.2d 1122, 1127.

¶34. Affirmed.

/S/ JAMES C. NELSON


We Concur:


/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER


1. [1]Blackcrow did not submit any proposed jury instructions and did not request any instruction on the issue of accomplice testimony. Blackcrow does not appeal the failure of the District Court to instruct the jury on this issue.