FILED

January 17 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA



DA 06-0808

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 13

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

COBY JAMES MARLER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDC 05-036-1
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender, Helena, Montana

      For Appellee:

          Hon. Mike McGrath, Attorney General; Jennifer Anders, Assistant Attorney
General, Helena, Montana

          Brant S. Light, Cascade County Attorney; John Parker, Deputy County
Attorney, Great Falls, Montana

Submitted on Briefs:  October 31, 2007

Decided:  January 17, 2008

Filed:

_____
                    Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Coby James Marler (Marler) appeals his convictions in the Eighth Judicial District, Cascade County, for criminal mischief in violation of § 45-6-101(1)(a), MCA, and conspiracy to commit robbery in violation of §§ 45-4-102 and 45-5-401, MCA. We affirm.

¶2 We review the following issue on appeal:

¶3 *Did the District Court err in denying Marler's motion for a directed verdict of acquittal?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶4 Bob Wilson contacted the Great Falls Police Department early in January of 2005. Mr. Wilson reported bullet-hole damage at the apartment of his daughter, Melissa Wilson. Detective John Schaffer met with Mr. Wilson at his daughter's apartment.

¶5 Mr. Wilson handed Detective Schaffer a clipboard with a handwritten map. The map appeared to detail the floor layout of a business. Someone had written the words "casino," "lounge," and "liquor store" on the map. Mr. Wilson told Detective Schaffer that he believed the map detailed the layout of either the Lucky Lil's Casino located on Fox Farm Road (Lucky Lil's) or an establishment named The Brick. Mr. Wilson also informed Detective Schaffer that his daughter had been dating a guy named Coby.

¶6 Detective Schaffer obtained a search warrant for Melissa Wilson's (Wilson) apartment. Detective Schaffer's search revealed several bullet holes in the apartment's wall. Detective Schaffer recovered a .380 caliber slug from the wall.

¶7 Detective Schaffer went to Lucky Lil's. The floor plan of the casino closely resembled the floor plan on the handwritten map. Detective Schaffer learned that Wilson

2

recently had quit working at Lucky Lil's. Detective Schaffer grew concerned about the potential for an armed robbery of the casino. Detective Schaffer put out an all-points bulletin notifying officers to locate and stop Wilson's car.

¶8 Detective Schaffer personally stopped Wilson's car. Wilson's friend, Jamie Kirkhart (Kirkhart), had been driving the car when Detective Schaffer stopped it. Detective Schaffer arrested Kirkhart pursuant to an active warrant for her arrest. Additional officers collected Kirkhart's personal property, including Kirkhart's cell phone.

¶9 Kirkhart asked Detective Schaffer to provide her with a phone number from her cell phone during the arrest. An image taken with the phone's camera feature appeared as Detective Schaffer turned on the phone. The image that appeared on the phone displays Marler and Wilson sitting together. The image shows Marler holding a handgun.

¶10 Detective Schaffer retrieved additional images from the cell phone. One image depicts Marler and two friends, Josh McMunn (McMunn) and Eric Hadnott (Hadnott), sitting together on a couch. The image shows each person displaying a hand-gesture. The image shows Hadnott and Marler holding handguns. Kirkhart told Detective Schaffer that McMunn might have information concerning Marler and Wilson.

¶11 Detective Schaffer contacted McMunn. McMunn informed Detective Schaffer that Marler had admitted to McMunn to firing a .380 caliber handgun inside Wilson's apartment. McMunn told Detective Schaffer that Marler and Wilson had attempted to recruit him and Hadnott to assist in robbing Lucky Lil's. McMunn also told Detective Schaffer that Marler had disclosed to McMunn that he and Wilson needed money in order to move to Tucson,

3

Arizona. McMunn assured Detective Schaffer that he had no interest in assisting Marler and Wilson with the robbery.

¶12 Detective Schaffer learned that Wilson and Marler had been staying at Kirkhart's residence. The Great Falls Police Department's high-risk unit traveled to the residence. A car arrived at Kirkhart's residence as the high-risk unit approached. Hadnott carried a concealed Heckler & Koch USP .40 caliber handgun as he got out of the car. The high-risk unit arrested Hadnott and recovered the handgun. The high-risk unit arrested Marler and Wilson at Kirkhart's residence. The high-risk unit recovered no additional handguns during the arrests. The Great Falls Police Department recovered an American Arms .380 caliber handgun, however, in a separate investigation. The .380 caliber handgun appeared to match a handgun held by Marler in one of the cell phone images.

¶13 The State charged Marler with criminal mischief in violation of § 45-6-101(1)(a), MCA, and conspiracy to commit robbery in violation of §§ 45-4-102 and 45-5-401, MCA. Wilson unwillingly testified at trial. Wilson testified that the plan to rob Lucky Lil's had "started off as a joke." She testified that the joke later became a reality. Wilson claimed that she and Marler seriously had considered robbing the casino to fund their plans to move to Tucson, Arizona. Wilson recounted that she and Marler had attempted to recruit McMunn and Hadnott to assist in the robbery. Wilson stated that she and Marler had attempted to recruit McMunn and Hadnott both before and after the plan to rob the casino had become serious. Wilson stated that McMunn and Hadnott did not explicitly agree to rob Lucky Lil's.

4

She insisted, however, that "[w]hatever we wanted to do, they were there with us." Wilson stated that she, Marler, McMunn and Hadnott comprised a "family."

¶14    The State questioned Wilson at trial about the holes in her apartment wall. Wilson stated that she and Marler had shot the holes in the wall. The State submitted a .380 caliber handgun into evidence. Wilson stated that she and Marler had used the .380 caliber handgun to shoot the wall. Wilson identified the handgun as the one that she and Marler had used based upon some modifications she had made to the gun's trigger.

¶15    Wilson also testified concerning the cell phone images discovered by Detective Schaffer. Wilson testified that the hand-gestures displayed by Marler, McMunn, and Hadnott in one of the images stood for "Modern Outlaw" and represented solidarity among the group. Wilson acknowledged that the same gun admitted as evidence at trial appeared in Marler's hand in at least one of the cell phone images. She stated that the cell phone's camera took both photos on the same day, approximately two weeks before her arrest.

¶16    Detective Schaffer testified concerning his investigation of the plan to rob Lucky Lil's. He testified that Wilson's father had provided him with a hand-drawn map that detailed the floor plan of the casino. Detective Schaffer stated that he had found three bullet holes in the wall of Wilson's apartment. He also stated that he had recovered a .380 caliber slug from the wall. Detective Schaffer stated that he had information that Marler and Wilson had been living together. Detective Schaffer also recounted the statements that McMunn had made to him during their interview.

5

¶17 McMunn also testified. McMunn stated that he was not close to Wilson. McMunn denied that he, Marler, Wilson, and Hadnott comprised a "family." McMunn stated that Wilson had lied about his willingness to assist with the plan to rob Lucky Lil's. McMunn claimed that he had lied to Detective Schaffer about Marler's plans to move to Tucson. McMunn also claimed that he had lied when he had told Detective Schaffer that Marler had admitted shooting a .380 caliber handgun at Wilson's apartment wall. McMunn admitted that he had changed his story to "[protect] the guy." The State asked McMunn if he was "not being honest [at trial] because you don't want [Marler] to get in trouble?" McMunn replied "Correct." McMunn subsequently contradicted that statement. McMunn claimed that he had lied only when speaking with Detective Schaffer. McMunn asserted that he had been testifying truthfully.

¶18 McMunn contended that he truthfully had told Detective Schaffer that Marler had approached McMunn and Hadnott about robbing Lucky Lil's. McMunn claimed that the plan to rob the casino simply constituted a joke at the time that Marler had attempted to recruit assistance. McMunn also stated that he truthfully had told Detective Schaffer that he had no interest in participating in the robbery.

¶19 Marler moved for a directed verdict of acquittal on the charge of conspiracy to commit robbery at the close of the State's evidence. Marler argued that the State had failed to provide sufficient corroborating evidence of Wilson's accomplice testimony as required by § 46-16-213, MCA. Marler asserted that McMunn met the definition of an accomplice as either "responsible or legally accountable for the same offense . . . ." Marler asserted that

insufficient evidence existed to corroborate Wilson's testimony when discounting McMunn's testimony. The District Court denied Marler's motion. The jury convicted Marler of both charges.

**STANDARD OF REVIEW**

¶20 We review *de novo* a district court's denial of a motion for a directed verdict. *State v. Swann*, 2007 MT 126, ¶ 19, 337 Mont. 326, ¶ 19, 160 P.3d 511, ¶ 19. A district court properly grants a motion for a directed verdict only when no evidence exists upon which a rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt, when viewing the evidence in a light most favorable to the prosecution. *Swann*, ¶ 16.

**DISCUSSION**

¶21 Marler argues that the District Court erred when it denied his motion for a directed verdict of acquittal. Marler contends that insufficient independent evidence existed to corroborate Wilson's testimony that Marler shot holes in Wilson's apartment wall and conspired with her to rob Lucky Lil's.

¶22 Section 46-16-213, MCA, provides that an accomplice's testimony alone cannot establish a person's guilt. A trier of fact may not find a person guilty solely from an accomplice's testimony "unless the testimony is corroborated by other evidence that in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant . . ." with the crime. Section 46-16-213, MCA.

¶23 Evidence may corroborate accomplice testimony sufficiently even though standing alone it fails to support a conviction or fails to make out a prima facia case against the

7

defendant. *State v. Burkhart*, 2004 MT 372, ¶ 24, 325 Mont. 27, ¶ 24, 103 P.3d 1037, ¶ 24. Circumstantial evidence, disputed evidence, or evidence that is consistent with innocent conduct may suffice to corroborate accomplice testimony. *Burkhart*, ¶ 24. Evidence fails to corroborate accomplice testimony sufficiently if it reveals nothing more than a crime's occurrence or the circumstances of the crime's commission. *Burkhart*, ¶ 24.

¶24 Marler argues on appeal that insufficient evidence exists to corroborate Wilson's statement that he had shot her apartment wall. Marler moved the District Court for a directed verdict of acquittal, however, only on the conspiracy to commit robbery charge. We therefore consider only whether sufficient evidence exists to corroborate Wilson's testimony regarding the conspiracy to rob Lucky Lil's.

¶25 Wilson testified that the plan to rob Lucky Lil's began as a joke. Wilson stated that she and Marler became serious about the conspiracy to rob the casino after she and Marler had made plans to leave town. Wilson continually employed the terms "us" and "we" in her testimony regarding the plan to rob the casino. Wilson explained that the term "us" denoted Marler and Wilson.

¶26 Wilson admitted to drawing a map of the floor layout of Lucky Lil's. She identified the map at trial. She testified that the X's on the map represented exits. She testified that the plan to rob the casino required armed individuals to "cover" each of the exits. Wilson stated that she and Marler had attempted to recruit McMunn and Hadnott to assist with the robbery.

¶27 Detective Schaffer provided some corroboration of Wilson's testimony. Detective Schaffer stated that he had received information that Marler and Wilson had a close

8

relationship and lived together. McMunn had told Detective Schaffer that Marler had stated that he and Wilson had made plans to leave town. McMunn also had told Detective Schaffer that Marler and Wilson had attempted to recruit McMunn and Hadnott to assist with the robbery, though the robbery was simply a joke at that time.

¶28 Detective Schaffer testified that he had learned that Marler and Wilson had moved out of Wilson's apartment and were staying temporarily at Kirkhart's apartment. The arrest of Hadnott and the confiscation of his weapon outside Kirkhart's apartment further supports the testimony that Marler had attempted to recruit armed assistance for the robbery. Hadnott's presence outside Kirkhart's apartment constitutes circumstantial evidence of Marler's involvement in a conspiracy to commit armed robbery.

¶29 The cell phone images further corroborate Wilson's testimony regarding her relationship with Marler, his relationship with McMunn and Hadnott, and the plan to commit armed robbery. One cell phone image depicts Marler and Wilson sitting together, with Wilson sitting on Marler's lap. Another image reveals Marler, McMunn, and Hadnott sitting in close proximity together on a couch. All three display the same hand-gesture. Both cell phone images show Marler holding a handgun. One image displays Hadnott and Marler holding handguns.

¶30 McMunn's interview statements and trial testimony also corroborated Wilson's testimony. McMunn's interview statements indicated that Marler had plans to leave town and had a need for funds. Furthermore, McMunn testified that his interview statement regarding Marler's recruiting attempt constituted one of only two true statements he had

made to Detective Schaffer. This statement connects Marler with the conspiracy, even if he made the statement at a time when the conspiracy remained in its infancy.

¶31 Marler contends that McMunn qualifies as "one responsible or legally accountable for the same offense . . ." for purposes of § 46-16-213, MCA. Marler argues that the District Court should have discounted any corroboration stemming from McMunn's out of court statements to Detective Schaffer. The State counters that the District Court found sufficient corroboration solely from the cell phone images and close relationship between Marler and Wilson. The State further asserts that the District Court properly left to the jury the task of determining whether McMunn constituted an accomplice under § 46-16-213, MCA.

¶32 We need not determine whether McMunn constituted an accomplice to the conspiracy to rob Lucky Lil's. *State v. Blackcrow*, 1999 MT 44, ¶ 23, 293 Mont. 374, ¶ 23, 975 P.2d 1253, ¶ 23. We determine only whether any rational trier of fact could have found that McMunn was not legally accountable for the conspiracy, viewing the evidence in the light most favorable to the prosecution. *Blackcrow*, ¶ 23. Disputed evidence presents a question of fact properly determined by the jury. *Blackcrow*, ¶ 21.

¶33 Wilson's statements implicated McMunn as a co-conspirator. Wilson testified that she, Marler, McMunn and Hadnott comprised a "family." Wilson stated that although McMunn did not explicitly agree to help rob Lucky Lil's, "[w]hatever we wanted to do, [McMunn and Hadnott] were there with us." The cell phone image of Marler, Hadnott, and McMunn sitting together on a couch, each displaying the same hand-gesture, further connected McMunn with the conspiracy.

10

¶34 McMunn's testimony, on the other hand, contradicted Wilson's characterization of the group's relationship. McMunn denied that the group comprised a "family." He testified that he had no intention of assisting in the robbery of Lucky Lil's. McMunn also testified that he had expressed this fact to Detective Schaffer early in the investigation. Indeed, McMunn's testimony that he had no intention to help rob the casino constituted one of only two statements at trial that remained consistent with McMunn's interview statements to Detective Schaffer.

¶35 The District Court correctly did not resolve conflicting testimony regarding McMunn's status as an accomplice with regard to § 46-16-213, MCA, at the directed verdict stage. *Blackcrow*, ¶ 21. We need not consider in the present appeal whether the jury ultimately determined McMunn's status as an accomplice. Marler's motion for a directed verdict, however, required the District Court to review all evidence in a light most favorable to the prosecution. We too must consider McMunn a non-accomplice when undertaking a *de novo* review of Marler's motion for a directed verdict, given the conflicting testimony presented at trial concerning his status.

¶36 The State presented independent evidence tending to connect Marler with the conspiracy to commit robbery, when viewed in the light most favorable to the prosecution. Section 46-16-213, MCA, requires nothing more. *See State v. Fey*, 2000 MT 211, ¶ 21, 301 Mont. 28, ¶ 21, 7 P.3d 358, ¶ 21. We conclude that the District Court correctly denied Marler's motion for a directed verdict of acquittal.

¶37 Affirmed.

11

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JIM RICE

Justice Patricia O. Cotter dissents.

¶38     I dissent. I would conclude there was insufficient evidence upon which a rational trier of fact could have found the essential elements of the crime of conspiracy to commit robbery beyond a reasonable doubt.

¶39     The elements of the crime of conspiracy are set forth in § 45-4-102(1), MCA. The statute provides in pertinent part:

> (1) A person commits the offense of conspiracy when, with the purpose that an offense be committed, he agrees with another to the commission of that offense. No person may be convicted of conspiracy to commit an offense unless an act in furtherance of such agreement has been committed by him or by a coconspirator.

First, there was a total failure of proof that any "act in furtherance" of the conspiracy was committed. However, as the parties did not raise this issue, I proceed to address the Court's rationale for affirming Marler's conviction. In this connection, I submit that we cannot accept all of the "corroborating facts" upon which the Court relies, and if we accept those facts the jury was entitled to consider, there was wholly insufficient evidence independent of the coconspirators' testimony to establish that Marler agreed with others to commit the offense of robbery.

12

¶40 I disagree with the Court's assertion at ¶ 35 that "we too" must consider McMunn a non-accomplice when undertaking a review of Marler's motion for a directed verdict. The problem is that we are alone in our determination that McMunn is a non-accomplice. In this regard, the District Court record is instructive.

> COURT: [I]nsofar that the State is relying on the testimony of Ms. Wilson and Mr. McMunn to corroborate or establish the involvement or linkage between Mr. Marler and this conspiracy, those people are co-conspirators on the evidence that we have.
> . . . .
> COURT: Before we get to what [defense counsel] has to say about [the status of McMunn], let me tell you why it seems to me that that is the case on this evidence, is that Ms. Wilson testified squarely and unequivocally that Mr. McMunn, as well as Mr. Marler, were involved in this substantially from very early on, and that they were, in her words, "down with it," and in [the prosecutor's] words, "completely on board with it."
> And Mr. McMunn has denied that. And that's a question of fact, I guess, for the jury that I don't need to resolve nor can I resolve it here at the moment.
> But there's certainly evidence that is strong here that Mr. McMunn was, in fact, a co-conspirator, notwithstanding his denial.

Given that the District Court did *not* presume McMunn to be a non-accomplice, we should not be premising our analysis upon such a presumption.

¶41 In reviewing the District Court's denial of Marler's motion "our review is limited to whether any rational trier of fact, in viewing the evidence in the record in the light most favorable to the prosecution, could have found that [McMunn] was not implicated in the commission of those crimes, and that therefore [his] testimony required no further corroboration." *Blackcrow*, ¶ 23. Here, I find the Court's assumption that McMunn is a non-accomplice difficult to accept, not only given the record as set forth above, but also given the fact that the evidence upon which the Court relies to prove the existence of the

13

conspiracy also directly implicates McMunn as part and parcel of that conspiracy. The Court asserts that the cell phone pictures are proof of the existence of a conspiracy; McMunn is in those pictures in a manner indicating his membership in the "Modern Outlaws." Opinion, ¶ 29. Moreover, another co-conspirator, Wilson, testified that McMunn was involved in the conspiracy. Opinion, ¶ 33. Indeed, as noted by the District Court, the prosecution itself believed that McMunn was a part of the conspiracy. Upon what specific evidence, then, does the Court assume that McMunn was a non-accomplice? The only possible evidence to support this position is McMunn's statement that he was not involved in the conspiracy.

¶42    In truth, the Court would have it both ways: On the one hand, the Court finds that cell phone images of Marler, McMunn, and Hadnott, and the statements made by McMunn, directly implicate Marler in a conspiracy. Opinion, ¶¶ 29, 30. On the other hand, the Court examines exactly the same evidence to conclude that McMunn is not a part of this conspiracy based on his statements to the contrary. This analysis is inherently inconsistent.

¶43    It bears noting that the District Court did not ultimately ask the jury to make any determination regarding McMunn's accountability, nor were any jury instructions given as to the ramifications of McMunn's status as an accomplice or non-accomplice. Therefore, we don't know *how* the jury viewed McMunn's status—either it presumed that McMunn was an accomplice, thus precluding any lawful reliance upon his testimony to establish Marler's guilt, or that he was not. In any event, because the District Court judge did not presume for purposes of the directed verdict that McMunn was a non-accomplice, neither should we. I therefore submit we have unwisely deviated from the considered approach we have applied

14

to our review of motions for a directed verdict under *Blackcrow,* and that we err by elevating McMunn to the status of a non-accomplice in order to justify our decision.

¶44  According to the Court, the remaining corroborative evidence against Marler (other than McMunn's testimony) consisted of: (1) Marler and Wilson lived together and had plans to leave town (Opinion, ¶ 27); (2) Hadnott's presence outside Kirkhart's apartment (Opinion, ¶ 28); and (3) the cell phone images on Kirkhart's phone (Opinion, ¶ 29). These "pieces of evidence" do not in any way "tend to connect the defendant" with the crime of conspiracy to commit a robbery. Section 46-16-213, MCA. While we have held that evidence that is "possibly consistent with innocent conduct" may suffice to corroborate accomplice testimony (Opinion, ¶ 23; *Burkhart,* ¶ 24), we have also cautioned that corroborating evidence " 'must raise more than a suspicion of the defendant's involvement in, or opportunity to commit, the crime charged.' " *Burkhart*, ¶ 28 (quoting *State v. Kemp*, 182 Mont. 383, 387, 597 P.2d 96, 99 (1979)). The above evidence simply does not, under the most generous of conjectures, raise *more than* a suspicion that Marler was involved in a conspiracy to commit robbery.

¶45  That Marler lived with Wilson and was acquainted with the others, and even that he at one time possessed a gun—a gun never connected to the conspiracy—does not support more than a conclusion that Marler hung out with a rough crowd, held a gun for a photo, and liked to act like a tough guy. Such facts could indict hundreds of thousands of immature males; however, they barely support even "a suspicion" that Marler might have been involved in a conspiracy to commit robbery. Under our jurisprudence as set forth in *Kemp* and *Burkhart*,

15

this is not enough. Therefore, I would conclude the District Court erred in denying Marler's motion for a directed verdict of acquittal, and I would reverse his conviction. I dissent from our refusal to do so.

/S/ PATRICIA COTTER

Justices James C. Nelson and W. William Leaphart join in the Dissent of Justice Patricia O. Cotter.

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART