JUSTICE MORRIS
delivered the Opinion of the Court.
¶ 1 Coby James Marler (Marler) appeals his convictions in the Eighth Judicial District, Cascade County, for criminal mischief in violation of § 45-6-101(l)(a), MCA, and conspiracy to commit robbery in violation of §§ 45-4-102 and 45-5-401, MCA. We affirm.
¶2 We review the following issue on appeal:
¶3 Did the District Court err in denying Marler’s motion for a directed verdict of acquittal?
FACTUAL AND PROCEDURAL BACKGROUND
¶4 Bob Wilson contacted the Great Falls Police Department early in January of 2005. Mr. Wilson reported bullet-hole damage at the apartment of his daughter, Melissa Wilson. Detective John Schaffer met with Mr. Wilson at his daughter’s apartment.
¶5 Mr. Wilson handed Detective Schaffer a clipboard with a handwritten map. The map appeared to detail the floor layout of a business. Someone had written the words “casino,” “lounge,” and “liquor store” on the map. Mr. Wilson told Detective Schaffer that he believed the map detailed the layout of either the Lucky Lil’s Casino located on Fox Farm Road (Lucky Lil’s) or an establishment named The Brick. Mr. Wilson also informed Detective Schaffer that his daughter had been dating a guy named Coby.
¶6 Detective Schaffer obtained a search warrant for Melissa Wilson’s (Wilson) apartment. Detective Schaffer’s search revealed several bullet holes in the apartment’s wall. Detective Schaffer recovered a .380 caliber slug from the wall.
¶7 Detective Schaffer went to Lucky Lil’s. The floor plan of the casino closely resembled the floor plan on the handwritten map. Detective Schaffer learned that Wilson recently had quit working at Lucky Lil’s. *122 Detective Schaffer grew concerned about the potential for an armed robbery of the casino. Detective Schaffer put out an all-points bulletin notifying officers to locate and stop Wilson’s car.
¶8 Detective Schaffer personally stopped Wilson’s car. Wilson’s friend, Jamie Kirkhart (Kirkhart), had been driving the car when Detective Schaffer stopped it. Detective Schaffer arrested Kirkhart pursuant to an active warrant for her arrest. Additional officers collected Kirkhart’s personal property, including Kirkhart’s cell phone.
¶9 Kirkhart asked Detective Schaffer to provide her with a phone number from her cell phone during the arrest. An image taken with the phone’s camera feature appeared as Detective Schaffer turned on the phone. The image that appeared on the phone displays Marler and Wilson sitting together. The image shows Marler holding a handgun.
¶10 Detective Schaffer retrieved additional images from the cell phone. One image depicts Marler and two friends, Josh McMunn (McMunn) and Eric Hadnott (Hadnott), sitting together on a couch. The image shows each person displaying a hand-gesture. The image shows Hadnott and Marler holding handguns. Kirkhart told Detective Schaffer that McMunn might have information concerning Marler and Wilson.
¶11 Detective Schaffer contacted McMunn. McMunn informed Detective Schaffer that Marler had admitted to McMunn to firing a .380 caliber handgun inside Wilson’s apartment. McMunn told Detective Schaffer that Marler and Wilson had attempted to recruit him and Hadnott to assist in robbing Lucky Lil’s. McMunn also told Detective Schaffer that Marler had disclosed to McMunn that he and Wilson needed money in order to move to Tucson, Arizona. McMunn assured Detective Schaffer that he had no interest in assisting Marler and Wilson with the robbery.
¶12 Detective Schaffer learned that Wilson and Marler had been staying at Kirkhart’s residence. The Great Falls Police Department’s high-risk unit traveled to the residence. A car arrived at Kirkhart’s residence as the high-risk unit approached. Hadnott carried a concealed Heckler & Koch USP .40 caliber handgun as he got out of the car. The high-risk unit arrested Hadnott and recovered the handgun. The high-risk unit arrested Marler and Wilson at Kirkhart’s residence. The high-risk unit recovered no additional handguns during the arrests. The Great Falls Police Department recovered an American Arms .380 caliber handgun, however, in a separate investigation. The .380 caliber handgun appeared to match a handgun held by Marler in one of the cell phone images.
*123 ¶13 The State charged Marler with criminal mischief in violation of § 45-6-101(l)(a), MCA, and conspiracy to commit robbery in violation of §§ 45-4-102 and 45-5-401, MCA. Wilson unwillingly testified at trial. Wilson testified that the plan to rob Lucky Lil’s had “started off as a joke.” She testified that the joke later became a reality. Wilson claimed that she and Marler seriously had considered robbing the casino to fund their plans to move to Tucson, Arizona. Wilson recounted that she and Marler had attempted to recruit McMunn and Hadnott to assist in the robbery. Wilson stated that she and Marler had attempted to recruit McMunn and Hadnott both before and after the plan to rob the casino had become serious. Wilson stated that McMunn and Hadnott did not explicitly agree to rob Lucky Lil’s. She insisted, however, that “[w]hatever we wanted to do, they were there with us.” Wilson stated that she, Marler, McMunn and Hadnott comprised a “family.”
¶14 The State questioned Wilson at trial about the holes in her apartment wall. Wilson stated that she and Marler had shot the holes in the wall. The State submitted a .380 caliber handgun into evidence. Wilson stated that she and Marler had used the .380 caliber handgun to shoot the wall. Wilson identified the handgun as the one that she and Marler had used based upon some modifications she had made to the gun’s trigger.
¶15 Wilson also testified concerning the cell phone images discovered by Detective Schaffer. Wilson testified that the hand-gestures displayed by Marler, McMunn, and Hadnott in one of the images stood for “Modern Outlaw” and represented solidarity among the group. Wilson acknowledged that the same gun admitted as evidence at trial appeared in Marler’s hand in at least one of the cell phone images. She stated that the cell phone’s camera took both photos on the same day, approximately two weeks before her arrest.
¶16 Detective Schaffer testified concerning his investigation of the plan to rob Lucky Lil’s. He testified that Wilson’s father had provided him with a hand-drawn map that detailed the floor plan of the casino. Detective Schaffer stated that he had found three bullet holes in the wall of Wilson’s apartment. He also stated that he had recovered a .380 caliber slug from the wall. Detective Schaffer stated that he had information that Marler and Wilson had been living together. Detective Schaffer also recounted the statements that McMunn had made to him during their interview.
¶17 McMunn also testified. McMunn stated that he was not close to Wilson. McMunn denied that he, Marler, Wilson, and Hadnott comprised a “family.” McMunn stated that Wilson had lied about his *124 willingness to assist with the plan to rob Lucky Lil’s. McMunn claimed that he had lied to Detective Schaffer about Marler’s plans to move to Tucson. McMunn also claimed that he had lied when he had told Detective Schaffer that Marler had admitted shooting a .380 caliber handgun at Wilson’s apartment wall. McMunn admitted that he had changed his story to “[protect] the guy.” The State asked McMunn if he was “not being honest [at trial] because you don’t want [Marler] to get in trouble?” McMunn replied “Correct.” McMunn subsequently contradicted that statement. McMunn claimed that he had lied only when speaking with Detective Schaffer. McMunn asserted that he had been testifying truthfully.
¶18 McMunn contended that he truthfully had told Detective Schaffer that Marler had approached McMunn and Hadnott about robbing Lucky Lil’s. McMunn claimed that the plan to rob the casino simply constituted a joke at the time that Marler had attempted to recruit assistance. McMunn also stated that he truthfully had told Detective Schaffer that he had no interest in participating in the robbery.
¶19 Marler moved for a directed verdict of acquittal on the charge of conspiracy to commit robbery at the close of the State’s evidence. Marler argued that the State had failed to provide sufficient corroborating evidence of Wilson’s accomplice testimony as required by § 46-16-213, MCA. Marler asserted that McMunn met the definition of an accomplice as either “responsible or legally accountable for the same offense ....” Marler asserted that insufficient evidence existed to corroborate Wilson’s testimony when discounting McMunn’s testimony. The District Court denied Marler’s motion. The jury convicted Marler of both charges.
STANDARD OF REVIEW
¶20 We review de novo a district court’s denial of a motion for a directed verdict. State v. Swann, 2007 MT 126, ¶ 19, 337 Mont. 326, ¶ 19, 160 P.3d 511, ¶ 19. A district court properly grants a motion for a directed verdict only when no evidence exists upon which a rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt, when viewing the evidence in a light most favorable to the prosecution. Swann, ¶ 16.
DISCUSSION
¶21 Marler argues that the District Court erred when it denied his motion for a directed verdict of acquittal. Marler contends that insufficient independent evidence existed to corroborate Wilson’s *125 testimony that Marler shot holes in Wilson’s apartment wall and conspired with her to rob Lucky Lil’s.
¶22 Section 46-16-213, MCA, provides that an accomplice’s testimony alone cannot establish a person’s guilt. A trier of fact may not find a person guilty solely from an accomplice’s testimony “unless the testimony is corroborated by other evidence that in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant ...” with the crime. Section 46-16-213, MCA.
¶23 Evidence may corroborate accomplice testimony sufficiently even though standing alone it fails to support a conviction or fails to make out a prima facia case against the defendant. State v. Burkhart, 2004 MT 372, ¶ 24, 325 Mont. 27, ¶ 24, 103 P.3d 1037, ¶ 24. Circumstantial evidence, disputed evidence, or evidence that is consistent with innocent conduct may suffice to corroborate accomplice testimony. Burkhart, ¶ 24. Evidence fails to corroborate accomplice testimony sufficiently if it reveals nothing more than a crime’s occurrence or the circumstances of the crime’s commission. Burkhart, ¶ 24.
¶24 Marler argues on appeal that insufficient evidence exists to corroborate Wilson’s statement that he had shot her apartment wall. Marler moved the District Court for a directed verdict of acquittal, however, only on the conspiracy to commit robbery charge. We therefore consider only whether sufficient evidence exists to corroborate Wilson’s testimony regarding the conspiracy to rob Lucky Lil’s.
¶25 Wilson testified that the plan to rob Lucky Lil’s began as a joke. Wilson stated that she and Marler became serious about the conspiracy to rob the casino after she and Marler had made plans to leave town. Wilson continually employed the terms “us” and “we” in her testimony regarding the plan to rob the casino. Wilson explained that the term “us” denoted Marler and Wilson.
¶26 Wilson admitted to drawing a map of the floor layout of Lucky Lil’s. She identified the map at trial. She testified that the X’s on the map represented exits. She testified that the plan to rob the casino required armed individuals to “cover” each of the exits. Wilson stated that she and Marler had attempted to recruit McMunn and Hadnott to assist with the robbery.
¶27 Detective Schaffer provided some corroboration of Wilson’s testimony. Detective Schaffer stated that he had received information that Marler and Wilson had a close relationship and lived together. *126 McMunn had told Detective Schaffer that Marler had stated that he and Wilson had made plans to leave town. McMunn also had told Detective Schaffer that Marler and Wilson had attempted to recruit McMunn and Hadnott to assist with the robbery, though the robbery was simply a joke at that time.
¶28 Detective Schaffer testified that he had learned that Marler and Wilson had moved out of Wilson’s apartment and were staying temporarily at Kirkhart’s apartment. The arrest of Hadnott and the confiscation of his weapon outside Kirkhart’s apartment further supports the testimony that Marler had attempted to recruit armed assistance for the robbery. Hadnott’s presence outside Kirkhart’s apartment constitutes circumstantial evidence of Marler’s involvement in a conspiracy to commit armed robbery.
¶29 The cell phone images further corroborate Wilson’s testimony regarding her relationship with Marler, his relationship with McMunn and Hadnott, and the plan to commit armed robbery. One cell phone image depicts Marler and Wilson sitting together, with Wilson sitting on Marler’s lap. Another image reveals Marler, McMunn, and Hadnott sitting in close proximity together on a couch. All three display the same hand-gesture. Both cell phone images show Marler holding a handgun. One image displays Hadnott and Marler holding handguns.
¶30 McMunn’s interview statements and trial testimony also corroborated Wilson’s testimony. McMunn’s interview statements indicated that Marler had plans to leave town and had a need for funds. Furthermore, McMunn testified that his interview statement regarding Marler’s recruiting attempt constituted one of only two true statements he had made to Detective Schaffer. This statement connects Marler with the conspiracy, even if he made the statement at a time when the conspiracy remained in its infancy.
¶31 Marler contends that McMunn qualifies as “one responsible or legally accountable for the same offense ...” for purposes of § 46-16-213, MCA. Marler argues that the District Court should have discounted any corroboration stemming from McMunn’s out of court statements to Detective Schaffer. The State counters that the District Court found sufficient corroboration solely from the cell phone images and close relationship between Marler and Wilson. The State further asserts that the District Court properly left to the jury the task of determining whether McMunn constituted an accomplice under § 46-16-213, MCA.
¶32 We need not determine whether McMunn constituted an accomplice to the conspiracy to rob Lucky Lil’s. State v. Blackcrow, 1999 MT 44, ¶ 23, 293 Mont. 374, ¶ 23, 975 P.2d 1253, ¶ 23. We *127 determine only whether any rational trier of fact could have found that McMunn was not legally accountable for the conspiracy, viewing the evidence in the light most favorable to the prosecution. Blackcrow, ¶ 23. Disputed evidence presents a question of fact properly determined by the jury. Blackcrow, ¶ 21.
¶33 Wilson’s statements implicated McMunn as a co-conspirator. Wilson testified that she, Marler, McMunn and Hadnott comprised a “family.” Wilson stated that although McMunn did not explicitly agree to help rob Lucky Lil’s, “[wjhatever we wanted to do, [McMunn and Hadnott] were there with us.” The cell phone image of Marler, Hadnott, and McMunn sitting together on a couch, each displaying the same hand-gesture, further connected McMunn with the conspiracy.
¶34 McMunn’s testimony, on the other hand, contradicted Wilson’s characterization of the group’s relationship. McMunn denied that the group comprised a “family.” He testified that he had no intention of assisting in the robbery of Lucky Lil’s. McMunn also testified that he had expressed this fact to Detective Schaffer early in the investigation. Indeed, McMunn’s testimony that he had no intention to help rob the casino constituted one of only two statements at trial that remained consistent with McMunn’s interview statements to Detective Schaffer.
¶35 The District Court correctly did not resolve conflicting testimony regarding McMunn’s status as an accomplice with regard to § 46-16-213, MCA, at the directed verdict stage. Blackcrow, ¶ 21. We need not consider in the present appeal whether the jury ultimately determined McMunn’s status as an accomplice. Marler’s motion for a directed verdict, however, required the District Court to review all evidence in a light most favorable to the prosecution. We too must consider McMunn a non-accomplice when undertaking a de novo review of Marler’s motion for a directed verdict, given the conflicting testimony presented at trial concerning his status.
¶36 The State presented independent evidence tending to connect Marler with the conspiracy to commit robbery, when viewed in the light most favorable to the prosecution. Section 46-16-213, MCA, requires nothing more. See State v. Fey, 2000 MT 211, ¶ 21, 301 Mont. 28, ¶ 21, 7 P.3d 358, ¶ 21. We conclude that the District Court correctly denied Marler’s motion for a directed verdict of acquittal.
¶37 Affirmed.
CHIEF JUSTICE GRAY, JUSTICES WARNER and RICE concur.