

DA 08-0337

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 257

STATE OF MONTANA,

      Plaintiff and Appellee,

v.

ERIC JOHN McCOLLOM,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-07-253
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            David C. Avery (argued), Attorney at Law, Missoula, Montana

      For Appellee:

            Steve Bullock, Montana Attorney General; John Paulson (argued), Assistant
Attorney General, Helena, Montana

            Fred R. VanValkenburg, Missoula County Attorney; Kirsten Pabst-LaCroix,
Deputy County Attorney, Missoula, Montana

Argued and Submitted: June 24, 2009

Decided: August 4, 2009

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1      A jury in the Fourth Judicial District, Missoula County, convicted Eric McCollom (McCollom) of felony criminal mischief for setting fire to a dumpster. McCollom moved for a new trial on the grounds that the District Court erroneously had allowed a police officer to testify to the out-of-court statement of McCollom's friend when the friend was unavailable for trial. The friend's statement implicated McCollom in setting the fire. The District Court denied this motion and imposed a deferred sentence on McCollom. McCollom filed this timely appeal. We reverse.

¶2      McCollom raises two issues on appeal. He first argues that the District Court violated his right to confrontation when it allowed a police officer to testify as to a friend's out-of-court statement. We need not reach this issue, however, in light of our resolution of the question of whether McCollom had adopted the friend's statement as his own. We restate the dispositive issue as follows:

¶3      **Whether the District Court erroneously admitted the statement of an unavailable third-party on the basis that McCollom had adopted as his own the third-party's statement implicating McCollom?**

## PROCEDURAL AND FACTUAL BACKGROUND

¶4      McCollom returned home in the early morning hours of August 27, 2006, after having dinner and drinks in downtown Missoula. McCollom joined his neighbors, Jake Allen (Allen) and Nate Wise (Wise), who were in the process of moving out of their apartment. The three friends continued to drink and eventually decided to discard some junk in nearby garbage dumpsters.

2

¶5      The three friends loaded an old couch into a truck and drove to Shopko. They dumped the couch in a parking lot behind the store. The friends ignited the couch before leaving the area. The three friends reloaded the truck upon returning home. This time they drove to the Cine III Theatre and discarded the items into a large metal dumpster. The group ignited the contents of the dumpster. Police and fire crews responded to the two fires. Officers saw McCollom and Allen running away from the area. Officers picked up McCollom, Allen, and Wise for questioning.

¶6      Officer Michael Wood (Wood), a detective with the Missoula Police Department, investigated the fires. Wood determined that McCollom and Wise were too intoxicated to be interviewed on the night of their arrests. Wood allowed McCollom and Wise to leave on the condition that they return the next day for questioning.

¶7      Wood interviewed Allen that night, however, as Wood felt that Allen was capable of giving a statement. Allen admitted to Wood that he and McCollom had started the Shopko fire. Allen claimed that McCollom alone had started the fire in the dumpster behind the Cine III. Wood recorded his interview with Allen.

¶8      Wise told Wood that he did not see who started the fire, but claimed that he did see McCollom with a lighter in his hand. Wise also claimed that he saw McCollom adding more items to the fire.

¶9      McCollom telephoned Allen before going to the police station for his interview with Wood. McCollom explained to Allen that he remembered little of the events of the previous evening due to his high level of intoxication. He asked Allen for his recollection of events.

3

Allen relayed to McCollom that they were in trouble for starting the two fires. Allen cut short the telephone call as he was busy with other matters.

¶10     McCollom explained to Wood that he briefly had talked to Allen. McCollom claimed to be confused about what had happened. McCollom recalled that he had offered to help throw away some stuff belonging to Allen and Wise. McCollom could not recall the exact details, however, due to his level of intoxication. McCollom also could not recall how much he had to drink that night. He admitted that he had been drinking for a good portion of the day and evening.

¶11     McCollom claimed that he had no recollection of lighting either fire. He did not believe that he had helped start the fire in the dumpster behind the Cine III. McCollom acknowledged that he considered Allen to be trustworthy. McCollom also acknowledged that Allen claimed that McCollom had been next to the dumpster at Cine III at the time of the fire. McCollom conceded to Wood that it was possible that he could have been involved.

¶12     The damage caused by the fire in the dumpster behind the Cine III exceeded $1,000. As a result, the State charged McCollom with felony criminal mischief for starting the fire. Allen was unavailable at the time of McCollom's trial.

¶13     The State asked Wood at trial about Allen's statement implicating McCollom. McCollom objected to the question on the grounds that Allen's statement constituted inadmissible hearsay. The State argued that McCollom had adopted Allen's statement. McCollom countered that Allen's statement was testimonial and that any testimonial statement triggered his right of confrontation.

4

¶14 The District Court overruled McCollom's objection on the basis that sufficient evidence in the record established that McCollom had adopted Allen's statement as his own, pursuant to M. R. Evid. 801(d)(2)(B). The court pointed to several items from McCollom's interview with Wood. The court noted that McCollom had agreed that Allen was trustworthy. McCollom acknowledged that if Allen had claimed that McCollom had lit the fire "it was possible" that McCollom had in fact lit the fire. Finally the court cited McCollom's statement to Wood that Allen had been the most sober of the three friends and as a result McCollom was "going with what [Allen] said."

¶15 The jury convicted McCollom. McCollom moved for a new trial. The court denied McCollom's motion for a new trial. McCollom appeals.

## STANDARD OF REVIEW

¶16 We review a district court's evidentiary decisions to determine whether it abused its discretion. *State v. Mizenko*, 2006 MT 11, ¶ 8, 330 Mont. 299, 127 P.3d 458.

## DISCUSSION

¶17 **Whether the District Court erroneously admitted the statement of an unavailable third-party on the basis that McCollom had adopted as his own the third-party's statement implicating McCollom?**

¶18 M. R. Evid. 801(d)(2)(B) provides an exception to the hearsay rule if a party has manifested an adoption or belief in the truth of a statement. The Court in *State v. Widenhofer*, 286 Mont. 341, 950 P.2d 1383, recognized that the trial court first must make an

express determination that an innocent defendant normally would have made a response to the third-party's statement. *Widenhofer*, 286 Mont. at 349, 950 P.2d at 1388. Upon satisfaction of this first criterion the court must determine whether the State has presented sufficient evidence that the defendant acquiesced in the third-party's statement. *Widenhofer*, 286 Mont. at 349, 950 P.2d at 1388.

¶19 The fact that Montana modeled M. R. Evid. 801(d)(2)(B) after the federal rules of evidence also allows us to look for guidance from federal precedent. *Widenhofer*, 286 Mont. at 350, 950 P.2d at 1388. The Sixth Circuit has applied a similar test. The first inquiry is whether the statement was one that under the circumstances, "an innocent defendant would normally be induced to respond." *U.S. v. Jinadu*, 98 F.3d 239, 244 (6th Cir. 1996). The first criterion is of particular relevance in cases involving silent acquiescence. *Jinadu*, 98 F.3d at 244. The court then must determine whether sufficient facts exist from which the jury could infer that the defendant "heard, understood, and acquiesced in the statement." *Jinadu*, 98 F.3d at 244. The Seventh Circuit follows a slightly modified version of the test. It requires that the statement must have been made in the defendant's presence, that the defendant understood the statement, and that the defendant had the opportunity to deny the statement. *U.S. v. Ward*, 377 F.3d 671, 675 (7th Cir. 2004).

¶20 *Jinadu* involved a heroin bust after the delivery of a marked package. A federal drug agent initially interviewed the defendant. The defendant responded "yes" when asked by the agent if he knew that the package had contained "China White heroin." The agent died before the case proceeded to trial. The government sought to admit the agent's inquiry at

6

trial on the grounds that the defendant had adopted the agent's statement as his own. The court determined that the government had satisfied the first criterion by demonstrating that the defendant had answered "yes" to the agent's question about the content of the package. The court determined that the government had satisfied the second criterion by presenting evidence that the defendant had heard the agent's question and by presenting evidence that the defendant understood English. *Jinadu*, 98 F.3d at 244-45.

¶21 The first criterion addresses a defendant's silent acquiescence -- the most common form of adopted statement. *Jinadu*, 98 F.3d at 244. McCollom, of course, did not remain silent in the face of Allen's statements. We will focus on whether sufficient evidence exists that McCollom had acquiesced in Allen's statement. *Widenhofer*, 286 Mont. at 349, 950 P.2d at 1388; *Jinadu*, 98 F.3d at 244.

¶22 The "admission" in Widenhofer also arose from the defendant's silence. *Widenhofer*, 286 Mont. at 349, 950 P.2d at 1388. *Widenhofer* involved a DUI investigation. A passenger in the defendant's car claimed that the defendant had been the driver of the car and pointed out the defendant to the investigating officer. The defendant did not hear the passenger's statement and he did not witness the passenger's alleged identification. The defendant remained silent when questioned by the investigating officer regarding the passenger's statement. The State argued that the defendant had adopted the passenger's statement when he agreed to sit in the front seat of the patrol car and then remained silent to the accusations.

¶23 This Court determined that the defendant's absence from hearing the passenger's original statement combined with the defendant's subsequent failure to contradict the

7

passenger's statement did not rise to the level of an adoption. *Widenhofer*, 286 Mont. at 350, 950 P.2d at 1388. The Court considered the fact that the defendant had not heard the conversation between the officer and the passenger, and, in fact, had no reason to know what conversation might have been taking place between the passenger and the officer. *Widenhofer,* 286 Mont. at 350, 950 P.2d at 1388.

¶24 McCollom, too, was absent during Wood's interview with Allen. He did not hear or witness the discussion between the two. *Ward*, 377 F.3d at 675. McCollom did not hear the statement firsthand from Allen. McCollom did not hear the entirety of the conversation from Wood. Wood simply related to McCollom excerpts of his conversation with Allen from the previous evening.

¶25 The record fails to establish that McCollom adopted those portions of Allen's statement related by Wood. McCollom never heard the entire statement from Allen before talking to Wood. McCollom expressed equivocation regarding the statement when confronted by Wood. McCollom repeatedly reiterated the fact that he had been extremely intoxicated at the time of the incident. McCollom conceded to Wood that it possibly could be true that he had started the fire in the dumpster behind the Cine III. McCollom further agreed with Wood that Allen was "trustworthy."

¶26 McCollom never affirmatively agreed with Wood, however, that Allen's statement represented a definitive account of what had happened. The mere expressions that it was "possible," and that Allen was "trustworthy," fail to rise to the level of adoption. Our review of the record reveals insufficient facts that the jury could infer that McCollom "heard,

8

understood, and acquiesced in the statement." *Jinadu*, 98 F.3d at 244. The District Court abused its discretion by allowing Wood to testify as to Allen's statement that implicated McCollom.

¶27    Reversed and remanded for a new trial.


/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ JIM RICE