# FILED

May 25 2010

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 09-0490

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 116

IN THE MATTER OF

T.J.B.,

A Youth Under the Age of Eighteen.

APPEAL FROM:     Youth Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DJ 09-29
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Joslyn Hunt, Chief Appellate Defender; Eric Bunn, Assistant Appellate Defender; Helena, Montana

      For Appellee:

            Hon. Steve Bullock, Montana Attorney General; Jonathan M. Krauss, Assistant Attorney General; Helena, Montana

            Fred R. Van Valkenburg, Missoula County Attorney; Dori Brownlow, Deputy County Attorney; Missoula, Montana

Submitted on Briefs: March 17, 2010

Decided: May 25, 2010

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 T.J.B. appeals from an order of the Youth Court for the Fourth Judicial District, Missoula County, adjudicating him as a serious delinquent youth, and committing him to the custody of the Department of Corrections until he reaches the age of 18. We affirm.

¶2 We review the following issues on appeal:

¶3 *Did the Youth Court violate the Confrontation Clause when it denied T.J.B.'s motion in limine?*

¶4 *Did the Youth Court properly deny T.J.B.'s motion for a directed verdict?*

¶5 *Did the Youth Court properly refuse T.J.B.'s proposed jury instruction?*

¶6 *Did sufficient evidence support the Youth Court's jury instruction on serious bodily injury?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶7 T.J.B. and several of his friends engaged in numerous acts of vandalism in Missoula over the course of two weeks in February 2009. T.J.B. and his friends "hung out" and drank together. They drove around Missoula smashing car windows. They accomplished much of the damage by shooting car windows with BB guns. T.J.B. and his friends took turns shooting from the front passenger seat. Sometimes they would shoot at parked cars as they drove past. Other times they would get out, walk up to the parked car, and shoot the windows. They would decide at random whether to shoot at a parked car.

¶8 T.J.B. and his friends also shot the windows of businesses and schools, and sometimes used rocks or metal pipe to break the windows. T.J.B. and his friend J.F. also

2

stole a car stereo from one of the cars that they had vandalized. T.J.B. estimated that he and his friends broke between seventy-five and one hundred windows during their vandalism spree. T.J.B. occasionally shot at moving vehicles, and on at least one occasion, he shot at a pedestrian. T.J.B. and J.F. stole spray paint, food, beer, and later a BB gun from Wal-Mart. They used the stolen paint to "tag" graffiti at the skate park and at other locations around Missoula.

¶9 Detectives conducted a videotaped interview with T.J.B. on February 20, 2009. Detectives arrested T.J.B. after the interview. The State filed a petition in which it alleged that T.J.B. was a delinquent youth. The State alleged that T.J.B. had committed the offenses of felony conspiracy to commit criminal mischief by common scheme, felony criminal endangerment, misdemeanor criminal mischief, and misdemeanor theft.

¶10 The investigating officers testified at trial subject to cross-examination by T.J.B. The State played the videotape of T.J.B.'s interview at trial. T.J.B. did not object. T.J.B. did object to ten "statements" contained in the interview questions. T.J.B. asserted that these statements constituted hearsay because they were attributable to witnesses who were not testifying at trial and therefore who would not be subject to cross-examination. T.J.B. claimed that the introduction of the statements would violate his constitutional right to confront the witnesses against him.

¶11 The Youth Court admitted eight of the ten statements that did not constitute hearsay or that T.J.B. had adopted, affirmed, or admitted. The Youth Court initially sustained T.J.B's objection to the remaining two statements because T.J.B. had denied them and the

3

declarant was not scheduled to testify at trial. The Youth Court reversed its initial ruling after the declarant, J.F., testified.

¶12 T.J.B. moved to dismiss the conspiracy charges at the close of the State's case based upon insufficient evidence. The Youth Court found the record to be "replete with evidence of conspiracy." The Youth Court refused T.J.B.'s proffered jury instruction on negligent endangerment as a lesser included offense of criminal endangerment. The Youth Court instead instructed the jury on criminal endangerment and the definition of "serious bodily injury" over T.J.B.'s objection.

¶13 The jury returned a unanimous verdict. The jury found that T.J.B. had committed all of the offenses with which the State had charged him. The Youth Court adjudicated T.J.B. as a delinquent youth and serious juvenile offender. The court committed T.J.B. to the Pine Hills Youth Correctional Facility until his eighteenth birthday. T.J.B. appeals.

**STANDARD OF REVIEW**

¶14 We review a court's evidentiary decisions for an abuse of discretion. *State v. Mizenko*, 2006 MT 11, ¶ 8, 330 Mont. 299, 127 P.3d 458. A court possesses no discretion, however, in the correct interpretation of the Sixth Amendment. *Id.* (citing *Crawford v. Washington*, 541 U.S. 36, 42, 124 S. Ct. 1354, 1359). We review *de novo* a court's interpretation of the Sixth Amendment. *Id.*

¶15 We review *de novo* a court's denial of a motion for a new trial on sufficiency of evidence grounds. *State v. Jackson*, 2009 MT 427, ¶ 23, 354 Mont. 63, 221 P.3d 1213. We view the evidence in the light most favorable to the prosecution to determine whether a

4

rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. *Id.* We will not substitute our judgment for that of the jury, and we will assume every fact that the jury could have deduced from the evidence. *Id.*

¶16   We review jury instructions in their entirety to determine whether the instructions, taken as a whole, fully and fairly presented the applicable law to the jury. *State v. Schmidt*, 2009 MT 450, ¶ 26, 354 Mont. 280, 224 P.3d 618. The trial court has broad discretion in formulating jury instructions. *Id.* The instructions must affect prejudicially the appellant's substantial rights to constitute reversible error. *Id.*

## DISCUSSION

¶17   *Did the Youth Court violate the Confrontation Clause when it denied T.J.B.'s motion in limine?*

¶18   T.J.B. filed a motion *in limine* to prevent any mention of portions of the interview that referred to the statements of suspects who were not scheduled to testify at trial. T.J.B. argues on appeal that the Youth Court's admission of ten "statements" taken from his interview with police officers violated his Sixth Amendment right to confront the witnesses against him. The ability to cross-examine a witness represents the cornerstone of a defendant's right to confront the witnesses against him. *See State v. Sanchez*, 2008 MT 27, ¶ 32, 341 Mont. 240, 177 P.3d 444. This rule does not apply to non-hearsay statements, however, or to hearsay statements made by a declarant who is available for cross-examination at trial. *United States v. Mitchell*, 502 F.3d 931, 966 (9th Cir. 2007).

¶19 The Youth Court initially admitted eight of the statements after determining that they did not constitute inadmissible hearsay. The court determined that a number of the statements constituted adoptive admissions. A party's own statement, or one in which the party has manifested an adoption or belief in its truth, does not qualify as hearsay. M. R. Evid. 801(d)(2)(A), (B). This Court addressed the issue of whether a defendant has adopted the statement of another for purposes of Rule 801(d)(2)(B) in *State v. McCollom*, 2009 MT 257, 323 Mont. 10, 214 P.3d 1230, and *State v. Widenhofer*, 286 Mont. 341, 950 P.2d 1383 (1997).

¶20 This Court in *Widenhofer* determined that a suspect had not adopted a statement under Rule 801(d)(2)(B) where the suspect had entered a patrol car at the officer's request, had not heard the initial statement, and had not responded to the officer's question about the statement. In *McCollom*, we applied a Sixth Circuit test articulated in *U.S. v. Jinadu*, 98 F.3d 239, 244 (6th Cir. 1996). The Sixth Circuit determined that a criminal defendant's "yes" answer to an officer's question about the contents of a package containing drugs constituted sufficient evidence to determine that the defendant had "heard, understood, and acquiesced in the statement." *Jinadu* at 244.

¶21 The purported adoption at issue in *McCollum* involved an equivocal statement by the defendant – who was intoxicated at the time – that another suspect's statement that McCollum had started a fire "possibly" could be true. *McCollum*, ¶ 25. McCollum equivocated and asserted repeatedly that he had been extremely intoxicated and could not remember the incident. Like the defendant in *Widenhofer*, McCollum had not heard the

6

suspect's statement to the officer and the officer had recounted only portions of his conversation with the suspect. McCollum never affirmatively agreed with the officer's statements. McCollum stated only that the other suspect was generally a trustworthy and honest person and that it was "possible" that McCollum had lit the fire about which he was being questioned. *Id.* at ¶ 14. We determined that insufficient facts existed to support the requirement under *Jinadu* that McCollum had "heard, understood, and acquiesced in the statement." *Id.* at ¶ 26.

¶22 The statements that T.J.B. challenges do not present the same ambiguity. The interviewing officer asked T.J.B. if he had been at a party. T.J.B. indicated that he did not remember, but agreed that the statements of other suspects placing him at the party were likely to be correct. The officer asked "so you were with them if they said you were?" T.J.B. answered, "yes, sir." The officer further inquired whether T.J.B. had been breaking windows with the other suspects, and T.J.B. answered, "yes, sir." The officer asked T.J.B. how he could remember having broken windows when he could not remember having been present. T.J.B. responded "because I'm pretty sure that's something I would do." Unlike McCollum, T.J.B. clearly understood, and more importantly, agreed unequivocally with the statements. We conclude based on the record before us that T.J.B. effectively adopted the statements at issue, and that the Youth Court therefore properly denied T.J.B.'s motion *in limine.*

¶23 The Youth Court denied T.J.B.'s motion with respect to two other statements on the basis that the statements did not constitute hearsay. Hearsay is a statement, other than one

made by the declarant while testifying, offered in evidence to prove the truth of the matter asserted. M. R. Evid. 801(c). One of the statements involved a statement by T.J.B.'s brother about the artistic abilities of an alleged graffiti tagger.

> **Officer**: Well, I mean your brother commented about [B.] had some style so, I mean, was he with you or wasn't he?
>
> **T.J.B**.: I guess he was.

The Youth Court determined that the State had not offered the statement in order to "prove the truth of the matter asserted" – that B. possessed artistic ability while wielding a can of spray paint − but rather to indicate whether T.J.B. knew of B.'s participation in the vandalism.

¶24 The second "statement" involved an observation by the interviewing police officer that one of the suspects preferred to shoot from a moving vehicle.

> **Officer**: [K.] seemed to like driving by. He didn't like to stop. He just liked to drive by and, wham. That sound right?

The Youth Court admitted the officer's statement because it was not the statement of another person. The interviewing officer himself uttered the "statement" about the shooting habits of K., one of T.J.B.'s alleged co-conspirators. The officer testified at trial and T.J.B. cross-examined him at length. The officer's statement does not constitute hearsay under M. R. Evid. 801 because the officer was available to be cross-examined at trial. The Youth Court properly allowed the statements in evidence.

¶25 The Youth Court initially sustained T.J.B.'s objection to two remaining statements made by J.F., one of T.J.B.'s alleged co-conspirators. The court granted T.J.B.'s motion

because T.J.B. had denied the assertions and J.F. initially was not scheduled to testify at trial. The Youth Court later admitted the video in its entirety when J.F. testified at trial. T.J.B. cross-examined J.F. at trial. The Youth Court's admission of the interview tape in its entirety did not violate T.J.B.'s confrontation rights.

¶26 *Did the Youth Court appropriately deny T.J.B.'s motion for a directed verdict?*

¶27 The Youth Court denied T.J.B.'s motion for a directed verdict to dismiss the two counts of conspiracy to commit criminal mischief based upon insufficiency of evidence. Section 46-16-213, MCA, precludes a defendant from being convicted based solely on an accomplice's testimony "unless the testimony is corroborated by other evidence that . . . tends to connect the defendant with the commission of the offense." T.J.B. argues that his participation in a conspiracy could not have been proven based solely on the evidence of his alleged co-conspirator J.F. T.J.B. relies on *State v. Marler*, 2008 MT 13, 341 Mont. 120, 176 P.3d 1010, for the proposition that he could not have been convicted of a conspiracy based solely on J.F.'s testimony. T.J.B. misplaces reliance on *Marler*.

¶28 We determined in *Marler* that "evidence may corroborate accomplice testimony sufficiently even though standing alone it fails to support a conviction or fails to make out a prima facie case against the defendant." *Id.* at ¶ 23. Corroborating evidence presented by the State created an issue of fact that rendered a directed verdict inappropriate. The District Court in *Marler* "correctly did not resolve conflicting testimony . . . with regard to § 46-16-213, MCA." *Id.* at ¶ 35.

9

¶29 The State presented extensive circumstantial evidence in addition to J.F.'s testimony. The State presented evidence that T.J.B. and J.F. were together on the nights that the vandalism had been committed. The State presented evidence that T.J.B. and J.F. met at T.J.B.'s house and went out together with the purpose of breaking windows. The State presented evidence that T.J.B. and J.F. stole items together that they later used to commit acts of vandalism. The State presented numerous photographic exhibits of the guns that T.J.B. and J.F had used to engage in the vandalism and of the damage that they had inflicted. The court evaluated this evidence in concert with the admissions contained in T.J.B.'s interview with police officers and J.F.'s testimony. The State presented sufficient "independent evidence tending to connect [T.J.B.] with the conspiracy to commit [criminal mischief], when viewed in the light most favorable to the prosecution." *Marler*, ¶ 36. The Youth Court correctly referred resolution of this factual issue to the jury.

¶30 *Did the Youth Court appropriately refuse T.J.B.'s proposed jury instruction?*

¶31 The Youth Court found that the intentional nature of T.J.B.'s acts did not support T.J.B.'s request for a lesser included offense instruction on criminal endangerment. T.J.B. claims that the facts supported a negligent endangerment instruction because T.J.B. admitted in the taped interview that he "may" have shot at moving cars "one time." T.J.B. argues that "the jury certainly could have concluded that it was merely negligent to shoot once in the general direction of moving cars."

¶32 A person commits the offense of criminal endangerment when he knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another. Section

10

45-5-207(1), MCA. A person acts "knowingly" when he is aware of his own conduct and when he is aware that it is highly probable that his conduct will cause a proscribed result. Section 45-2-101(35), MCA. Negligent endangerment differs from criminal endangerment by the state of mind required for commission of the offense. Section 45-5-208, MCA. A person acts "negligently" when he consciously disregards a risk that a result will occur or that a circumstance exists. Section 45-2-101(43), MCA.

¶33 A court must provide a lesser included offense instruction only if a party requests it *and* the jury rationally could find the defendant guilty of the lesser included offense. *Schmidt*, ¶ 42. The record indicates that T.J.B. took aim and fired at moving vehicles, and on at least one occasion fired at a pedestrian. The act of aiming and firing a gun at a person implicates knowing, rather than negligent, conduct. T.J.B.'s purpose in firing a gun at a person was to cause the intended result of hitting the person. The Youth Court properly determined that T.J.B. had engaged in knowing conduct and that a jury rationally could not find him guilty of negligent conduct. The Youth Court did not abuse its considerable discretion in the formulation of the jury instruction. *Schmidt*, ¶ 26.

¶34 *Did sufficient evidence support the Youth Court's jury instruction on serious bodily injury?*

¶35 The Youth Court instructed the jury on serious bodily injury based on its conclusion that the question of whether T.J.B.'s actions created a "substantial risk of serious bodily injury" presented a question of fact for the jury. The Youth Court reasoned that the jury should determine whether T.J.B.'s admitted conduct created a substantial risk of death,

11

serious permanent disfigurement, or an expected result of serious permanent disfigurement. Section 45-2-101(66), MCA.

¶36 T.J.B. argues that the State failed to present evidence of actual death or permanent disfigurement. T.J.B. adduces no authority in support of his position. In fact, T.J.B. cites to portions of the transcript in which he admitted that he thought injury could result from his actions in shooting at a person. Criminal endangerment, by definition, creates a "substantial risk" of serious bodily injury. The State need not demonstrate that serious bodily injury actually resulted in order to satisfy the elements of the offense. Section 45-5-207(1), MCA. "Serious bodily injury" constitutes one element of criminal endangerment. The Youth Court did not abuse its discretion by choosing to instruct the jury on the definition of "serious bodily injury" in the context of the criminal endangerment charge. *Schmidt*, ¶ 26.

¶37 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART