FILED

03/22/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0302

DA 20-0302

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 59

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

BRANDON JAMES LEWIS TOLLIE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                 In and For the County of Lake, Cause No. DC-19-189
                 Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Chad Wright, Appellate Defender, Gregory Hood, Assistant Appellate
                Defender, Helena, Montana

        For Appellee:

                Austin Knudsen, Montana Attorney General, Tammy K Plubell,
                Assistant Attorney General, Helena, Montana

                Steven Eschenbacher, Lake County Attorney, Benjamin R. Anciaux,
                Deputy County Attorney, Polson, Montana

                          Submitted on Briefs:  February 9, 2022
                                 Decided:  March 22, 2022

Filed:

                       _____
                               Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Brandon Tollie appeals from a March 31, 2020 judgment in the Twentieth Judicial District Court in Lake County. A Lake County jury found Tollie guilty of two counts of burglary and two counts of theft. At the close of the State's presentation of its case, Tollie had moved for the District Court to direct a verdict of not guilty based on the insufficiency of the State's evidence. The District Court denied that motion regarding the charges for which Tollie was then convicted. Tollie appeals that decision.

¶2     We restate the issue on appeal as follows:

*Was the State's evidence connecting Tollie to these crimes impermissibly based on uncorroborated accomplice testimony?*

¶3     We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     In July 2019, the State charged Tollie with a total of eight crimes: two counts each of burglary and theft at two different properties. The first property belonged to Wayne Treweek. The State alleged that Tollie broke into Treweek's property on two different dates in September 2018 and each time stole things. The second property was the Mountain Lake Lodge. The State alleged that once in October 2018 and again in November 2018, Tollie broke into the Mountain Lake Lodge and stole things.

¶5     At trial, the State presented seven witnesses. The first two were Treweek and a manager at the Mountain Lake Lodge. They testified to the circumstances of discovering the burglaries at their respective properties and documenting the items stolen. Next, the

State presented three witnesses with personal connections to Tollie. All three were facing charges in connection with these and other burglaries in the area.

¶6 The first such witness was Crystal Chase, who said she was in a relationship with Tollie at the time of the Treweek burglaries. Chase testified that she and Tollie had broken into the Treweek property, but she denied that she or Tollie stole anything while there.

¶7 The second was Mitchell Raymond. The State had charged Raymond with possession of stolen property, including the property taken from the Mountain Lake Lodge and the Treweek property. Raymond testified to several specific items that law enforcement found in his possession, each from recent burglaries. Raymond explained that he had received those items from friends and given them drugs in exchange. Raymond testified that he knew or assumed the things were stolen. And Raymond testified that one person who brought him stolen goods was Tollie.

¶8 The third witness connected to Tollie was Eugene Germain. The State had also charged Germain with numerous burglaries in the area. Raymond had named Germain as another source of some of his stolen property. The State attempted to elicit testimony from Germain regarding statements Tollie had made to Germain about the burglaries. Germain was resistant, but when the prosecutor confronted him with prior statements he had made to law enforcement, Germain confirmed that he had recalled Tollie bragging to him about burglarizing a property which Germain demonstrated on a map was the Treweek property.

¶9 Finally, the State presented testimony from two law enforcement officers who had investigated the case. The first officer had investigated the stolen goods at Raymond's property. He testified that there, he found the things stolen from the Treweek property and

3

that Raymond told him he had received the things from Tollie. The first officer also testified about additional statements Chase had made when he spoke to her during the investigation; he said that she told him Tollie had taken tools when they broke into the Treweek property. The second officer had interrogated Germain. This officer described what Germain had told him about the burglaries. The jury also listened to a recording of the interrogation.

¶10 At the close of the State's case, Tollie made a motion for a directed verdict. Tollie's attorney argued that the State's evidence was insufficient to support a conviction because it relied on the uncorroborated statements of accomplices. The District Court had a back-and-forth on this matter with the prosecutor and with Tollie's attorney. The District Court ultimately concluded that the State had not provided enough independent corroboration to link Tollie to the thefts from Mountain Lake Lodge, and the court granted Tollie's motion on those counts. For the crimes at the Treweek property, however, the District Court concluded that there was enough corroborating evidence demonstrating Tollie's connection. These charges went to the jury following Tollie's defense presentation at which he testified and denied having broken into the Treweek property.

¶11 The jury found Tollie guilty on all burglary and theft counts regarding the Treweek property and not guilty on the remaining two Mountain Lake Lodge charges. Tollie now appeals the District Court's denial of his directed verdict motion regarding the Treweek charges.

## STANDARD OF REVIEW

¶12 The sufficiency of evidence to corroborate the testimony of an accomplice is a question of law. *State v. Fey*, 2000 MT 211, ¶ 5, 301 Mont. 28, 7 P.3d 358. We review a district court's legal conclusions for correctness. *State v. Bales*, 1999 MT 334, ¶ 43, 297 Mont. 402, 994 P.2d 17. "We review questions regarding the sufficiency of corroborating evidence in the light most favorable to the prosecution." *State v. Torgerson*, 2008 MT 303, ¶ 25, 345 Mont. 532, 192 P.3d 695.

## DISCUSSION

¶13 *Was the State's evidence connecting Tollie to these crimes impermissibly based on uncorroborated accomplice testimony?*

¶14 Tollie's appeal arises under an important principle in criminal law: the State may not prove someone guilty of a crime by simply pointing to evidence provided by an accomplice or someone else who is also legally accountable for that crime. Given the motivations of such witnesses to avoid or ameliorate their own punishment, such testimony is inherently untrustworthy and cannot, without corroboration, sustain a conviction. The Montana Legislature has codified this rule at § 46-16-213, MCA. Under the statute, to convict someone based on accomplice testimony, the State must corroborate that testimony with "other evidence that in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense." Section 46-16-213, MCA.

¶15 Our case law applying this standard has made clear that it depends on the circumstances of each case. *State v. Kemp*, 182 Mont. 383, 387, 597 P.2d 96, 99 (1979).

Sufficient corroborating evidence may be circumstantial, and it need not extend to every fact from an accomplice's testimony. *State v. Black*, 2003 MT 376, ¶ 24, 319 Mont. 154, 82 P.3d 926. Accomplice testimony cannot, however, be corroborated by other evidence that simply describes the occurrence or circumstances of a crime; the other evidence must raise some independent connection with the defendant that is apparent without reference to the accomplice testimony. *Kemp*, 182 Mont. at 387.

¶16 Preliminary to the question of whether other evidence sufficiently corroborates an accomplice, however, is the question of who is an accomplice. Section 45-2-302, MCA, defines when someone shares culpability for the purposes of § 46-16-213, MCA. It describes three general situations: (1) causing the other person to commit the crime; (2) being accountable according to the statutory definition of the crime; and (3) soliciting, aiding, or abetting the crime before or during its commission. Section 45-2-302, MCA. If a witness's shared legal accountability is in dispute, the question is one of fact that may go to the jury. *State v. Blackcrow*, 1999 MT 44, ¶ 21, 293 Mont. 374, 975 P.2d 1253.

¶17 In Tollie's case, we must therefore first consider the status of the three witnesses he contends were accomplices: Chase, Germain, and Raymond. As the parties and the judge discussed Tollie's motion at trial, it appears that the State did not really dispute that Chase and Germain were accomplices. The State admitted that "two of those [witnesses] are accomplices," although the State argued for a distinction about which witness was an accomplice to which charge.

¶18 Nonetheless, to begin with Chase, we consider her an undisputed accomplice in Tollie's crimes at the Treweek property. She admitted to being present during the alleged

6

crimes and to participating in some of the activity. The State also charged Chase for her conduct in this and other incidents. She falls squarely within parts (2) and (3) of the accomplice definition above, and her testimony requires non-accomplice corroboration.

¶19 Germain's status is less clear. None of the evidence demonstrated that Germain caused Tollie to commit the Treweek crimes or that he aided or abetted Tollie during the commission of those crimes. However, there is a question of whether Germain is an accomplice by statutory definition because the State *also* charged Germain with the Treweek burglary. While investigating these and other burglaries in the area, the State charged Germain with multiple counts, listing Treweek as one alleged victim. This led to the police interrogation, played for the jury, at which Germain admitted to some burglaries but denied participating in the Treweek burglary. Germain implicated Tollie in the burglary and theft of the Treweek property.

¶20 While in past cases we have noted that accomplice status may be a question for the jury, we have also noted that the State cannot contend someone is a non-accomplice when they still have pending charges—or continue to threaten charges—against that person for the same conduct. *State v. Johnson*, 276 Mont. 447, 451-52, 918 P.2d 293, 295-96 (1996). Here, the State charged Germain with the same Treweek crimes as Tollie, among others. Under these circumstances, the State may not fairly dispute Germain's status as an accomplice. *See Johnson*, 276 Mont. at 452. Thus, Germain's testimony, which includes his statements that Tollie bragged to him about committing the Treweek crimes, requires non-accomplice corroboration.

¶21 Raymond too was charged with theft of Treweek's property, for his possession of stolen goods. It is on this basis that Tollie contends Raymond counts as an accomplice—that they were both statutorily liable for the same crime. Section 45-6-301, MCA, establishes the crime of theft through multiple definitions. The first—Tollie's charge—involves taking control over someone's property and depriving them of it. Section 45-6-301(1), MCA. Another—Raymond's charge—involves taking control over property while knowing it to have been stolen. Section 45-6-301(3), MCA.

¶22 However, although these two crimes appear in the same statutory section, Tollie's argument misses that we have recognized them to be distinct offenses without the overlap that would render Raymond an accomplice to Tollie. "[A] thief is not considered an accomplice of the receiver of stolen property." *State v. Wirtanen*, 146 Mont. 268, 272, 406 P.2d 376, 378 (1965). And the inverse is also true because this rule is "predicated on the separate offense theory which states that larceny and receiving stolen property are separate and distinct crimes." *State v. Lamere*, 202 Mont. 313, 319, 658 P.2d 376, 379 (1983).[1] The theft under § 45-6-301(1), MCA, involves the "actual taking" of property, while theft under § 45-6-301(3), MCA, involves its receipt and retention with requisite knowledge. The two crimes by definition rest on separate bases. *State v. Kelley*, 2005 MT 200, ¶ 20, 328 Mont. 187, 119 P.3d 67. Furthermore, although these two crimes used to be defined in different statutory sections, their present status as two types of theft offenses within

_____

[1] The Dissent suggests that we consider overturning *Lamere* because of comments in *Wirtanen* about how both crimes have equally grave social costs. Dissent, ¶ 31. But the Dissent fails to explain why that would justify a higher bar for a receiver of stolen property testifying against a thief as opposed to a thief against a receiver.

8

§ 45-6-301, MCA, does not negate their status as "statutorily distinct crimes." *Lamere*, 202 Mont. at 319. Thus, although Raymond faced charges related to Tollie's alleged offenses, he is not a person legally accountable for the same offense as Tollie and is not an accomplice.

¶23 That leaves the State with accomplice testimony from Chase and Germain and non-accomplice testimony from Raymond, Treweek, and the investigating officers. We must consider whether the latter material independently connects Tollie to the crimes to sufficiently corroborate Chase and Germain.[2]

¶24 Treweek's testimony, standing alone, is the type of evidence describing the mere circumstances of a crime which we have held is insufficient. *Black*, ¶ 24. Treweek described the state of his property on the occasions of the break-ins, but none of this testimony personally implicates Tollie without the aid of Chase's or Germain's narratives or other evidence. Treweek did, however, describe the items that he was missing after the burglaries—tools, mostly—and noted that he provided law enforcement with a list he made at the time.

¶25 Raymond's testimony, by contrast, does provide an independent connection to Tollie. Raymond testified that Tollie sometimes brought him stolen property, and Raymond identified items in his possession that were the same property Treweek

---

[2] The Dissent suggests that it can infer Raymond's additional accomplice status from the District Court's comments at trial while discussing the motion with counsel. Dissent, ¶ 30. But it is the District Court's ultimate decision on Tollie's motion that we are concerned with on appeal, and our de novo review of the question negates any need for the verbal comments below to be determinative.

documented missing. Raymond's earlier statements, provided through the investigating officer, included confirming that the Treweek items came from Tollie. And the officer detailed the process of finding those items at Raymond's, confirming they matched Treweek's list and description, and gleaning from Raymond their source.

¶26 Combined, Treweek's, Raymond's, and the officer's testimony clearly establish an independent connection between Tollie and the alleged crimes: Tollie sometimes brought stolen goods to Raymond, Treweek was missing certain things after break-ins, Raymond had those things, and Raymond recalled receiving them from Tollie. We have held that corroborating evidence need not be sufficient on its own to sustain a conviction, but that it must at least raise more than a mere suspicion of the defendant's involvement. *Black*, ¶ 24. These witnesses' statements raise a direct link between Tollie and the Treweek burglaries, and they corroborate the other evidence provided by accomplices Chase and Germain. Thus, the District Court did not err in denying Tollie's motion for a directed verdict.

## CONCLUSION

¶27 The State presented sufficient non-accomplice corroborating testimony linking Tollie to the crimes for which he was convicted. The District Court's March 31, 2020 judgment is affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON

10

Justice Laurie McKinnon, dissenting.

¶28 I concur with the Court's conclusion that Chase and Germain were accomplices whose testimony required corroboration. However, I dissent as to the Court's conclusion regarding Raymond. The facts here lead me to conclude Raymond was an accomplice in the Treweek burglary.

¶29 The District Court's Judgment against Tollie required "[r]estitution shall be paid jointly and severally with all Co-Defendants including Eugene Germain, Mitchell Raymond and Crystal Chase." An offender's statutory restitution obligation arises from pecuniary loss suffered "as the result of the commission of an offense and constituting substantiated special damages . . . recover[able] against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities[.]" *State v. Pierre*, 2020 MT 160, ¶ 12, 400 Mont. 283, 466 P.3d 494 (citations omitted). "Consequently, an offender is responsible only for pecuniary victim losses he or she has agreed to pay or that are directly or indirectly caused by an offense he or she committed or is criminally accountable." *Pierre*, ¶ 12. Restated, the District Court recognized Raymond's role in the crimes and imposed liability for restitution on him. Raymond may not have been criminally accountable under § 45-2-302, MCA, but the District Court nonetheless held him accountable for the facts and events constituting the Treweek burglary.

¶30 The District Court's Judgment echoed its understanding that Raymond was an accomplice. In its order denying Tollie's motion to dismiss, the District Court ruled corroborating evidence would be necessary at trial. Implicit in this ruling is the understanding that the testimony of legally accountable individuals—Chase, Raymond,

11

and Germain—would require corroboration. During argument on Tollie's motion, the District Court further revealed its view that Raymond was an accomplice:

> In this matter, while I agree that it's interesting, I agree with Mr. Long's argument *to the extent that co-defendant's statement without corroboration isn't enough*. However, with regard to Mr. Treweek, he testified that there were at least three things that were specifically taken from his residence and he identified what those three things were. And those things are written in a property receipt and testified to by law enforcement with regard to those particular items and they had some specificity and they were in fact returned to Mr. Treweek because he claimed them and because they were consistent with what he said.
>
> So they don't have to have a lot of corroboration with regard to co-defendant's statements. They have to have something separate than just their own statements.

(Emphasis added). The District Court referred to the testimony of Tollie's co-defendants—including Raymond's—as requiring corroboration and cited Treweek's testimony—not Raymond's—as corroborative. However, Treweek testified to the items stolen from him and recovered on Raymond's property but said he did not know Tollie and had no way to identify who stole the items. This testimony, even viewed in the light most favorable to the State, indicates only that a crime occurred, but fails to implicate Tollie. *See State v. Marler*, 2008 MT 13, ¶ 23, 341 Mont. 120, 176 P.3d 1010. Nor did the testimony of the two law enforcement officers independently connect Tollie to the Treweek burglary. Finally, the State granted limited immunity to Raymond, as well as Germain, for their testimony. "The threat of continued prosecution" of Germain "for the same crime" Tollie was charged with "was an admission by the State" of Germain's accomplice status. *See Johnson*, 276 Mont. at 452, 918 P.2d at 296. Notwithstanding the distinction between Raymond's crimes and Tollie's, to procure Raymond's testimony by "the threat of

12

continued prosecution" and then argue there is no basis to find Raymond accountable, and thus an accomplice whose testimony requires corroboration, "was the kind of duplicitous conduct . . . that cannot be sanctioned by the law." *See Johnson*, 276 Mont. at 452, 918 P.2d at 296. In my opinion, *Johnson's* reasoning and the State's grant of limited immunity places Raymond's status as Tollie's accomplice similarly beyond dispute.

¶31 I recognize the precedential effect of our holding in *Lamere*. However, I believe *Lamere*'s inversion of *Wirtanen* without further analysis distorted the *Wirtanen* Court's view of thieves and recipients of stolen property as co-equals. As the *Wirtanen* Court noted "It is the receiver, the person who knowingly receives stolen property for his own gain, who encourages larceny by providing a market for thieves. His crime, from the standpoint of society, is as great as that of the thief." *Wirtanen*, 146 Mont. at 274, 406 P.2d at 379. Instead of recognizing this crucial distinction, the *Lamere* Court inverted *Wirtanen*'s holding without further analysis. *Lamere* fails to capture situations where, as here, the recipient of stolen property serves as a "fence" through which the thief exchanges stolen property for other items. Here, Raymond served as the "fence" through which Tollie exchanged for drugs Treweek's stolen property. Despite not planning or participating in the actual theft, the recipient nonetheless serves a vital role, as the *Wirtanen* Court recognized. In my opinion, there is a distinction between the recipient of stolen property being an accomplice as opposed to being criminally accountable under § 45-2-302, MCA. I regret that *Lamere*'s thinly reasoned bright-line rule disregards this distinction and forces the Court to ignore the facts of each case.

¶32 Respectfully, I dissent.

13

/S/ LAURIE McKINNON